972 F.2d 1145
 30 Wage & Hour Cas. (BNA) 1665, 122 Lab.Cas.
P 35,680
 Billy W. LAMON, Paul E. Pagacz, Ronald W. Ward, Donald
Foltz, Michael G. McCoy, Larry Evans, John England, Mark W.
Hein, Franklin K. Sullivan, Mark A. Ashurst, Paul F. Arnold,
Terry P. Lawson, Randy A. Peddicord, Thomas F. Carney, and
Ana Louisa Gamblin, administrator of the estate of Donald B.
Gamblin, Jr., deceased, Plaintiffs-Appellants and Cross-Appellees,
v.
CITY OF SHAWNEE, KANSAS, Defendant-Appellee and Cross-Appellant,
National Institute of Municipal Law Officers, Amicus Curiae,
League of Kansas Municipalities, Amicus Curiae,
State of Kansas, Amicus Curiae,
Grand Lodge, Fraternal Order of Police, Amicus Curiae.
 Nos. 91-3053, 91-3068, 91-3216 and 91-3217.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 10, 1992.
 
 1
 Harold S. Youngentob, Goodell, Stratton, Edmonds & Palmer, Topeka, Kan. (Leslie E. Diehl, with him on the brief), for plaintiffs-appellants and cross-appellees.
 
 
 2
 Marvin E. Rainey, Marvin E. Rainey & Associates, Overland Park, Kan. (Eric R. Arner, with him on the brief), for defendant-appellee and cross-appellant.
 
 
 3
 James D. Conkright and Jana V. Richards, Blackwell Sanders Matheny Weary & Lombardi, Overland Park, Kan. by brief, for amicus curiae, Nat. Institute of Mun. Law Officers in support of defendant-appellee and cross-appellant.
 
 
 4
 James M. Kaup and Michael M. Schultz, Topeka, Kan. by brief, for amicus curiae, League of Kansas Municipalities in support of defendant-appellee and cross-appellant.
 
 
 5
 Robert T. Stephan, Atty. Gen., and Carl A. Gallagher, Assistant Attorney General, Topeka, Kan. by brief, for amicus curiae, State of Kan. in support of defendant-appellee and cross-appellant.
 
 
 6
 James E. Phillips, G. Ross Bridgman and Allen S. Kinzer, Vorys, Sater, Seymour and Pease, Columbus, Ohio by brief, for amicus curiae, Grand Lodge, Fraternal Order of Police in support of plaintiffs-appellants and cross-appellees.
 
 
 7
 Before BALDOCK and BARRETT, Circuit Judges, and PARKER*, District Judge.
 
 
 8
 PARKER, District Judge.
 
 
 9
 Plaintiffs-Appellants ("Plaintiffs"), fifteen current and former police officers and sergeants of the City of Shawnee Police Department, brought this action in district court against Defendant-Appellee City of Shawnee ("Defendant" or "City"), asserting violations of the Fair Labor Standards Act of 1938 ("FLSA" or "the Act"), § 1 et seq., as amended, 29 U.S.C. § 201 et seq.[1] (R., Appendix to Brief of Appellants, exh. A). Plaintiffs alleged that the City violated FLSA's compensation provisions by failing to pay Plaintiffs for meal periods occurring during work shifts and for failing to compensate those Plaintiffs working as supervisors ("supervisory Plaintiffs")[2] for the time necessary to prepare for the daily pre-shift briefings. (R., Appendix to Brief of Appellants, exh. A & C). These issues were tried to a jury, which returned a verdict in favor of Plaintiffs on the question of compensability of meal periods but against the six supervisory Plaintiffs seeking compensation for preparation time.[3] Based on the jury's further finding that the City had established a 28-day work period in accordance with FLSA, the district court by subsequent memorandum and order awarded compensatory and liquidated damages, attorneys' fees and costs to Plaintiffs. The central questions[4] raised by the parties on cross-appeal are (1) whether the evidence supported a finding that the City established a 28-day work period under FLSA, thereby making available to the City a more lenient overtime standard under the Act, (2) whether the district court erred in calculating the rate at which Plaintiffs should be compensated for meal periods, if those periods are compensable, (3) whether the trial court erred in not directing a verdict for Defendant and in instructing the jury on the compensability claims for meal periods, (4) whether the jury's determination that the supervisory Plaintiffs were not entitled to recover for time spent prior to pre-shift briefings was supported by substantial evidence, and (5) whether the trial court properly awarded liquidated damages and attorneys' fees. We affirm in part, reverse in part, vacate in part, and remand for further proceedings.
 
 I. BACKGROUND
 
 10
 This dispute arises out of the City's promulgation of new compensation policies for the City's Police Department. The requirements of FLSA became applicable to state and local government employers on April 15, 1986, as mandated by Congress in its 1985 amendments to FLSA. Fair Labor Standards Amendments of 1985, Pub.L. No. 99-150 (1985). In anticipation of the new requirements, specifically pursuant to § 207(k) of FLSA, the City adopted Administrative Code No. 2-5, effective March 30, 1986, setting forth a 28-day work period and providing for overtime payment for hours worked in excess of 171 hours within the 28-day cycle. (R., Answer Brief of Appellee, exh. B). During a 28-day cycle, each police officer works 20 shifts and is paid twice, once every 14 days. (R., Appellee's Supplemental Appendix, exh. G at 519). Every 24-hour day is divided into three slightly overlapping shifts, each of 8 1/2 hours in duration, consisting of a 15-minute briefing period before patrol duty, a 30-minute lunch break, and a final 15-minute period to complete reports and turn in equipment, with the remaining time allocated to patrol duty. (R., Appellee's Supplemental Appendix, exh. G at 90-95, 122, & 340). However, for each 8 1/2-hour shift, the City pays for 8 hours of work, not compensating for an officer's meal period unless the meal period is interrupted by a call to duty. Although the City's compensation policies only require overtime compensation for work in excess of 171 hours during the cycle, the City has abided by the practice of paying overtime for all work, excluding uninterrupted meal periods, in excess of forty hours per week, or 160 hours per 28 days. (R., Appellee's Supplemental Appendix, exh. G at 522-24). The City has compensated, at an overtime wage of time and one-half, any officer called to duty during a meal period. (R., Appellee's Supplemental Appendix, exh. G at 85).
 
 
 11
 An officer's 1/2-hour meal period begins once the officer arrives at a luncheon location and reports "10-10" to the dispatcher, signifying the suspension of patrol duty. (R., Appellee's Supplemental Appendix, exh. G at 130). During meal periods, officers are relieved of their patrol assignments, but are subject to call and are required to leave a telephone number where they can be reached or to monitor a portable radio. (R., Appellee's Supplemental Appendix, exh. G at 797 & 800). While on meal break, an officer must respond to emergency calls or personnel shortages if instructed to do so. (R., Appendix to Appellants' Answer Brief, exh. 2 at 74, 96-97 & 368). An officer is relieved of patrol duties during meal time but retains some responsibilities, including: responding to citizen requests or inquiries, responding to crimes committed in the officer's presence and acting in a responsible and professional manner. (R., Appendix to Appellants' Answer Brief, exh. 1 at 808-09). Officers may take their meal periods at any location within the City or, with approval, outside the City at their homes or at restaurants if in close proximity to the City. (R., Appendix to Appellants' Answer Brief, exh. 1 at 811-12). The officers may not conduct personal business errands during the 1/2-hour period, such as picking up laundry at the cleaners, getting a haircut or grocery shopping. (R., Appendix to Appellants' Answer Brief, exh. 1 at 69).
 
 
 12
 Plaintiffs filed their Complaint on August 23, 1988. After denying the parties' cross-motions for summary judgment on the FLSA, Kansas labor act and implied contract claims by a memorandum and order entered October 4, 1990, 1990 WL 186280, the court set the question of liability for jury trial.[5] On October 22, 1990, the jury returned its verdict, finding the City liable on the mealtime claim. Thereafter, the parties briefed the correlating damages issue. In a memorandum and order of January 4, 1991, the court awarded damages, attorneys' fees and costs to Plaintiffs and denied Defendant's motion for new trial, to amend or vacate the verdict, or for judgment notwithstanding the verdict. Lamon v. City of Shawnee, 754 F.Supp. 1518 (D.Kan.1991). The court reasoned that the jury's finding of a 28-day work period partially released the City from paying overtime compensation. In short, Plaintiffs were entitled to be paid no more than their regular wage for hours worked over 160 and up through 171 hours and to be paid overtime for hours worked above 171 hours. Because the Plaintiffs took no more than ten hours in meal periods within a 28-day period, the court determined that the compensation due, however, would be calculated at the regular hourly rate. Id. Consistent therewith, the court awarded Plaintiffs $90,614.37 in actual damages and an equal amount in liquidated damages, plus attorneys' fees and costs. Id. Finally, by memorandum and order of May 10, 1991, 1991 WL 105211, the court denied Defendant's motion to alter or amend the damages, fees and costs award.
 
 II. DISCUSSION
 
 13
 With the passage of FLSA in 1938, Congress established a comprehensive remedial scheme requiring a minimum wage and limiting the maximum number of hours worked, absent payment of an overtime wage for all hours worked in excess of the specified maximum number. At its inception, FLSA did not apply to state and local governments. In 1974, Congress extended FLSA's reach to virtually all state and local government employees. FLSA Amendments of 1974, 29 U.S.C. § 203(d) and (x). See Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528, 533, 105 S.Ct. 1005, 1008, 83 L.Ed.2d 1016 (1985). But, in 1976, the Supreme Court invalidated FLSA's extension to state and local governments when those entities were performing traditional governmental functions, including the provision of police protection, ruling in National League of Cities v. Usery, 426 U.S. 833, 851-52, 96 S.Ct. 2465, 2474, 49 L.Ed.2d 245 (1976), that Congress' authority under the Commerce Clause was not so broad. See Wethington v. City of Montgomery, 935 F.2d 222, 224 (11th Cir.1991). Turning full circle and bringing FLSA essentially to its present posture, the Court's 1985 opinion in Garcia overruled the holding in National League of Cities, leaving the states and cities subject once again to the full thrust of FLSA. Garcia, 469 U.S. at 556-57, 105 S.Ct. at 1020. Because of the difficulty posed to state and local employers by the sudden resurrection of the Act, Congress delayed until April 15, 1986 the Act's application to state and local governments. Fair Labor Standards Amendments of 1985, Pub.L. No. 99-150 (1985).
 
 
 14
 The backbone provisions of FLSA are its minimum wage and overtime requirements. FLSA's principal provision compelling the payment of an overtime wage for hours worked above a maximum hour threshold is § 207(a):
 
 
 15
 Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.
 
 
 16
 29 U.S.C. § 207(a)(1). Although a state or local government, in its employment of law enforcement or fire protection personnel, may chose to conform to the maximum hour and overtime provisions contained in § 207(a)(1), the governmental entity may adopt an alternative scheme available under § 207(k). In enacting the FLSA Amendments of 1974, "Congress recognized that certain jobs are not easily susceptible to the workweek method of wage and time calculations, and therefore provided special calculation methods for some trades, including fire protection and law enforcement." Wethington, 935 F.2d at 224 (citing § 207(k)). Raising the regular rate ceiling, § 207(k) provides:
 
 
 17
 No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities or any employee in law enforcement activities ... if--
 
 
 18
 (1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days ...; or
 
 
 19
 (2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) of paragraph (1)) bears to 28 days,
 
 
 20
 compensation at a rate not less than one and one-half times the regular rate at which he is employed.
 
 
 21
 29 U.S.C. § 207(k). Pursuant to 29 C.F.R. § 553.201, the Secretary of Labor has established that 171 hours is the maximum number of hours a law enforcement officer may work in a work period of 28 days before the officer must be paid an overtime wage. See 29 C.F.R. § 553.230. Accordingly, in a 28-day period, § 207(k) permits a law enforcement employer to pay its police officers a regular wage for the first 171 hours worked, but then compels an overtime wage for work in excess of 171 hours. The number of hours at the regular and overtime wage rates for periods of fewer than 28 days would be calculated applying the same proportion, as explained in 29 C.F.R. § 553.230. See Lee v. Coahoma County, 937 F.2d 220, 224 (5th Cir.1991).
 
 
 22
 A. Establishment of bona fide 28-day work period under § 207(k) of FLSA.
 
 
 23
 The first question we must consider centers on the factual basis supporting the City's implementation of a 28-day work period under FLSA. Plaintiffs contend that although the City may have adopted a work regime pursuant to § 207(k) on paper, the program was never put into effect, consequently making that subsection's provisions unavailable to the City. The district court encountered this question at several stages in the litigation: (1) the court rejected this contention prior to trial in its memorandum and order, filed on October 4, 1990, and during trial, when it denied Plaintiffs' oral motions for directed verdict; (2) at the close of the evidence, the court instructed the jury on the standard and elements necessary to find the City had established a 28-day regime; and, (3) after deliberation, the jury found that Defendant had established a 28-day work period. Plaintiffs claim error in each of these steps in the proceedings.[6]
 
 
 24
 1. The Court did not err in submitting the issue of the establishment of a 28-day work period to the jury.
 
 
 25
 Plaintiffs maintain that the district court erred as a matter of law in denying Plaintiffs' renewed motion for summary judgment or directed verdict on the issue of Defendant's failure to establish a bona fide 28-day/171-hour work period under § 207(k) of the Fair Labor Standards Act. A party moving for directed verdict does not have to show the absence of any evidence in support of the party opposing the motion. Instead, either at trial or upon review, the standard is whether there is evidence upon which the jury could properly find a verdict for the party opposing the motion, viewing the evidence most favorably and giving the benefit of all reasonable inferences from the evidence to that party. Brown v. McGraw-Edison Co., 736 F.2d 609, 612-13 (10th Cir.1984). "The court may not weigh the evidence, pass on the credibility of witnesses, or substitute its judgment for that of the jury." Id. at 613 (citing Yazzie v. Sullivent, 561 F.2d 183, 188 (10th Cir.1977). For a reviewing court to find error in a trial judge's denial of a motion for directed verdict, "we must find that the 'evidence points but one way and is susceptible to no reasonable inference supporting the party [opposing the motion.]' " Boehm v. Kansas City Power and Light Co., 868 F.2d 1182, 1185 (10th Cir.1989) (quoting Zimmerman v. First Federal Sav. & Loan Ass'n., 848 F.2d 1047, 1051 (10th Cir.1988)).
 
 
 26
 Plaintiffs argue that the evidence does not show that the City established a bona fide work period under § 207(k), because the compensation and scheduling practices under the new system were no different from those in effect before March 30, 1986, and, therefore, no different from the standard 40-hour workweek governed by § 207(a). Despite the institution of a 28-day work period under Administrative Code No. 2-5, the City continued to pay its law enforcement personnel every two weeks and to pay overtime for hours worked in excess of 40 hours per week. Based on those facts, Plaintiffs conclude that the City did not properly convert to a subsection (k) regime. Plaintiffs, however, fail to cite and this court is unaware of any authority supporting the contention that an employer, once having elected the subsection (k) option, must structure pay periods to be co-extensive with the chosen work period and may pay overtime only for hours worked beyond the legal maximum permitted at the regular wage. Indeed, this contention flies in the face of the federal regulations promulgated under FLSA.[7] Part 553 of Title 29 of the Code of Federal Regulations applies FLSA to employees of state and local governments. Section 553.224 defines "work period" as used in subsection (k):
 
 
 27
 (a) As used in section 7(k), the term "work period" refers to any established and regularly recurring period of work which, under the terms of the Act and legislative history, cannot be less than 7 consecutive days nor more than 28 consecutive days. Except for this limitation, the work period can be of any length, and it need not coincide with the duty cycle or pay period.... The beginning and ending of the work period may be changed, provided that the change is intended to be permanent and is not designed to evade the overtime compensation requirements of the Act.
 
 
 28
 29 C.F.R. § 553.224(a). This provision explicitly allows pay periods to vary from work periods and makes no mention of a requirement that overtime wage rates be paid only for hours exceeding 171 in a work period.
 
 
 29
 Other than adopting a specified work period, the employer is not required to restructure its overtime payment practices whatsoever; the employer has the option to do so.[8] The evidence was uncontroverted that the City adopted Administrative Code No. 2-5, setting forth the City's § 207(k) employment policy. Following therefrom, the jury properly could have found that the Defendant had established the alternative regime simply by the measure's adoption. That the measure affected little change does not render it a fiction.
 
 
 30
 Of course, an employer may not impose sham changes in its employment scheduling and compensation policies so as to evade the Act. See Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 42, 65 S.Ct. 11, 14, 89 L.Ed. 29 (1944). Plaintiffs charge that by instituting a subsection (k) regime, the City was merely paying lip service to FLSA, seeking only to circumvent FLSA's overtime compensation requirements. Plaintiffs cite International Asso. of Firefighters, Local 349 v. City of Rome, 682 F.Supp. 522, 527 (N.D.Ga.1988), for the proposition that a municipality must make bona fide schedule changes and may not reconstitute work hours and periods as a subterfuge or artificial device designed to avoid illegally the overtime provisions of FLSA. In Rome, the city extended by 15 minutes the 24-hour shift previously in effect for its firefighters in order to take advantage of subsection (k)'s exclusion of sleep time from compensated hours worked in a tour of duty in excess of 24 hours. The city admitted that its purpose in making the change was to reduce the compensable time by eight hours per shift so as to avoid overtime payments. The court determined that the city's purpose, by itself, did not make the city's actions improper, and indeed the purpose was one of several factors the court considered in evaluating the city's conduct.[9] Id. at 528. At bottom, there is nothing improper about a state or local-government employer adopting the subsection (k) framework in order to take advantage of that subsection's provisions. According to Plaintiffs, the City's actions went beyond the benign and were solely directed towards denying Plaintiffs overtime compensation for meal periods, if such periods were ever adjudged compensable. This argument, however, misses the mark.[10] Even if Defendant's sole purpose were to avoid the prospect of paying overtime rates for meal periods, Plaintiffs do not demonstrate in what way that aim would be improper. Section 207(k) gives employers of fire protection and law enforcement personnel greater leeway in structuring wage and time calculations. See Wethington, 935 F.2d at 224 (citing § 207(k)). The trial court correctly denied Plaintiffs' motion for directed verdict and renewed motion for summary judgment, as there was evidence upon which the jury could properly have found that the City had established 28-day work period permissible under subsection (k).
 
 
 31
 2. The Court properly instructed the jury.
 
 
 32
 Plaintiffs next submit that two of the trial court's instructions to the jury were in error. On appeal of a trial court's jury instructions, the appellate court, after review of the record as a whole, must determine whether the instructions correctly state the applicable law and provide the jury with ample understanding of the issues and standards of the case. United States v. Zimmerman, 943 F.2d 1204, 1213 (10th Cir.1991). "We must consider not whether the charge was faultless but whether the jury had an understanding of the issues and its duty to determine these issues." Id. In that regard, only prejudicial error in the jury instructions will mandate reversal. Big Horn Coal Co. v. Commonwealth Edison Co., 852 F.2d 1259, 1271 (10th Cir.1988).
 
 
 33
 The first instruction in question held Defendant to only a preponderance of the evidence standard in demonstrating its establishment of a bona fide subsection (k) program. The court's Instruction no. 4 stated in part:
 
 
 34
 With regard to its claim that it is exempt from the Act by establishment of a 28-day work period, defendant has the burden of proving that its claim to an exemption is more probably true than not.
 
 
 35
 (R., Appendix to Brief of Appellants, exh. I). It is Plaintiffs' position that a preponderance of the evidence standard is improper, because an employer claiming an exemption under FLSA must show affirmatively that the exemption applies. Certainly, "[a]n employer who asserts he is exempt from the Act 'has the burden of establishing the exemption affirmatively and clearly.' " Schoenhals v. Cockrum, 647 F.2d 1080, 1081 (10th Cir.1981) (citing Legg v. Rock Products Manufacturing Corp., 309 F.2d 172, 174 (10th Cir.1962)). But the City is not seeking an exemption as such.[11] Rather than taking the position that § 207 does not apply to it, the City contends only that § 207(a) does not apply, and that instead § 207(k) governs the City's maximum hour and overtime payment policies. As discussed previously, the City was entitled to chose the subsection (k) option. See Wethington, 935 F.2d at 224; Lee v. Coahoma County, 937 F.2d 220, 224 (5th Cir.1991). The district court was correct in instructing the jury to apply a preponderance of the evidence standard in determining whether the City in fact selected the subsection (k) option.
 
 
 36
 Second, Plaintiffs assert that the trial court's instructions were in error in failing to require proof of the implementation of a 171-hour overtime threshold as a prerequisite to finding the City had established a subsection (k) work period. Instruction no. 12 states:
 
 
 37
 You are instructed that in determining whether the City of Shawnee, Kansas has established a work period under 207(k) of the Fair Labor Standards Act, you may consider evidence of whether the City of Shawnee, Kansas, actually adopted a 28-day work period. To be adopted, the work period must have been put into effective operation by the City of Shawnee, Kansas.
 
 
 38
 (R., Appendix to Brief of Appellants, exh. I). Plaintiffs' objection to this instruction is simply a spin-off of the position advanced above: that the City did not establish a bona fide work period under § 207(k) because the compensation and scheduling practices under the new regime did not change after March 30, 1986. We have rejected that view. There is no basis for concluding that, once an employer has opted for the subsection (k) framework, the employer may only pay overtime for hours worked beyond the legal maximum permitted at the regular wage. See 29 C.F.R. § 553.224(a). The City chose to continue paying overtime starting at a lower threshold, a state of affairs which inured to Plaintiffs' benefit and which was the City's prerogative to devise. Plaintiffs were not prejudiced by the Court's instructions to the jury.
 
 
 39
 3. The jury's verdict was based on substantial evidence.
 
 
 40
 Finally, following the same line of reasoning, Plaintiffs assail the jury's verdict that the City did establish a 28-day work period. When a party challenges a jury verdict, the reviewing court will examine the record in the light most favorable to the prevailing party. White v. Conoco, Inc., 710 F.2d 1442, 1443 (10th Cir.1983). The court will not set aside the jury verdict unless the challenging party demonstrates that the verdict followed prejudicial error committed during the course of the trial or that the verdict was not based on substantial evidence. Id. Consistent with our prior analysis, we conclude that the jury verdict was supported by substantial evidence. The evidence that Defendant adopted Administrative Code No. 2-5 was uncontested. By adopting the measure, the City took the necessary and sufficient step to establish a subsection (k) regime.
 
 
 41
 Finally, Plaintiffs raise an evidentiary issue bearing on whether the verdict followed prejudicial error committed during the course of the trial court proceedings. After retiring to deliberate, the jury sent a note requesting the transcribed testimony of witnesses Chief Chester A. Hall and Captain Thomas J. Hayselden, Jr., both of whom had testified within the previous seven days. Because the transcripts were not then available, Plaintiffs' counsel requested a read-back of the testimony. The court denied the request, directing the jury to rely on its best recollection of the testimony. (R., Appendix to Brief of Appellants, exh. T at 24-36). Plaintiffs believe the testimony was crucial in showing the § 207(k) system was never activated, as both witnesses testified that the City never implemented a 171-hour overtime threshold. Even if this testimony were particularly pertinent, which it is not, the denial of the requested read-back was well within the trial judge's sound discretion. The testimony was not so complicated or remote in time that a read-back would have served any compelling purpose.
 
 B. Rate of Compensation
 
 42
 The second question for our consideration addresses the proper rate of compensation for Plaintiffs' time spent during meal periods, upon a jury determination that those periods are compensable.[12] While Plaintiffs contend that they should receive an overtime wage for mealtime hours, the Defendant argues that the statutory minimum wage should be the proper rate. The district court awarded Plaintiffs damages calculated at a regular hourly rate. The court reasoned that the jury's finding of a 28-day work period partially released the City from paying overtime compensation. Specifically, Plaintiffs were entitled to be paid no more than their regular wage for hours worked over 160 and up through 171 hours and to be paid overtime wages for hours worked above 171 hours. Because the Plaintiffs took no more than ten hours for meal periods within a 28-day cycle, the judge determined that the compensation due would be calculated at the regular hourly rate.
 
 
 43
 The issue of the proper calculation of mealtime compensation presents "a mixed question of law and fact which would require us to accept the district court's factual conclusions unless clearly erroneous but review the application of the facts to the law under a de novo standard." Federal Deposit Ins. Corp. v. Oaklawn Apartments, 959 F.2d 170, 173 (10th Cir.1992). The appellate record suggests no basis for doubting the district court's finding that each Plaintiff took no more than ten hours in meal periods within a 28-day period. This fact, along with the unassailed testimony that Plaintiffs received overtime compensation for all other time worked in addition to their regular 40 hours per week or 160 hours per 28 days, forms the factual basis for the district judge's legal conclusion that mealtime hours, all of which fell within the range of 160 to 171 hours per 28 days, would be appropriately compensated at a regular hourly rate. See 754 F.Supp. at 1521 n. 1. We affirm this decision for the reasons expressed in the district judge's opinion. As long as time spent for meal periods, together with the rest of an officer's compensable time at a regular wage, would not exceed 171 hours per 28 days, no overtime wages would be due for that total time, a result consistent with FLSA. Simply because Defendant chose, after adopting the § 207(k) plan, to continue paying an overtime wage for all hours worked over 160 hours per cycle, while not paying compensation for meal periods, does not compel the conclusion that, were mealtime to be adjudged compensable, the Defendant should be penalized for its own liberality. However, as the district court held, even if the City is not required to pay overtime, compensation for meal periods at a rate less than a regular wage would be contrary to FLSA.
 
 C. Compensability of meal periods
 
 44
 The third issue for our consideration is the compensability of meal periods. By cross appeal, the City maintains first that the trial court erred in denying Defendant's motion for directed verdict on the mealtime claim. The City moved for directed verdict at the conclusion of Plaintiffs' case and at the conclusion of all the evidence. The trial court denied both motions. Second, Defendant challenges the trial court's instructions to the jury with respect to the appropriate standard for determining the compensability of meal periods.[13]
 
 
 45
 1. The Court did not err in submitting to the jury the issue
 
 
 46
 of compensability of meal periods.
 
 
 47
 As discussed in detail below, in the § 207(k) context a law enforcement employee is considered to be completely relieved from duty during a meal period when the employee's time is not spent predominantly for the benefit of the employer. FLSA requires remuneration for meal periods during which a police officer is unable comfortably and adequately to pass the mealtime because the officer's time or attention is devoted primarily to official responsibilities. During meal periods, Shawnee police officers are required either to leave a telephone number where they can be reached or to monitor a portable radio. In addition to responding to emergency calls, officers must answer to personnel shortages if instructed to do so. Furthermore, an officer on meal break is obligated to respond to citizen requests or inquiries, to confront crimes committed in the officer's presence and to act in a responsible and professional manner. In selecting a meal location, the City restricts its police officers to the City limits or, with approval, to locations in close proximity to the City. Finally, the officers may not conduct personal business errands during the 1/2-hour period. Viewing this evidence most favorably and giving the benefit of all reasonable inferences from the evidence to Plaintiffs, we do not find that the evidence points but one way and is susceptible to no reasonable inference supporting the Plaintiffs' claim. Based on the number and range of restrictions placed on Plaintiffs, there was sufficient evidence upon which the jury could properly have returned a verdict for the Plaintiffs on this issue.
 
 
 48
 2. The Court erred in instructing the jury as to the
 
 
 49
 appropriate standard for determining the
 
 
 50
 compensability of meal periods.
 
 
 51
 The trial court's instructions on the law charged the jury with applying a "completely relieved from duty" standard in deciding the Plaintiffs' entitlement to compensation for meal periods. Instruction no. 10 directed:
 
 
 52
 Unless plaintiffs' meal periods are "bona fide" meal periods under the Fair Labor Standards Act, plaintiffs' meal periods are compensable work time. Bona fide meal periods are not work time. To qualify as a bona fide meal period, the employee must be completely relieved from duty for the purposes of eating regular meals. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.
 
 
 53
 (R., Appendix to Brief of Appellants, exh. I). This language closely tracks the Code of Federal Regulations treatment of "meal periods," under 29 C.F.R. § 785.19.[14] Nonetheless, as the introductory statement to Part 785 makes evident, the regulations contained therein are addressed to the standard workweek and are not specifically tailored to the employment practices permitted under § 207(k). See 29 C.F.R. § 785.1. In guiding the functioning of the Act as a whole, Part 785 delineates "the principles involved in determining what constitutes working time" under the minimum wage requirements of § 206 and the weekly overtime provisions of § 207, generally. Id. Although Part 785 is generally applicable, Part 553, which pertains to employees of state and local governments and specifically addresses the § 207(k) tour of duty regime, applies more precisely to the facts of this case. See 29 C.F.R. §§ 553.220-227.
 
 
 54
 Section 553.223(b) governs the compensability of meal periods, in the subsection (k) context, for law enforcement personnel working shifts of fewer than 24 hours.[15] Like § 785.19, this section requires compensation for meal periods during which an employee is not "completely relieved from duty." Also, 553.223(b), by reference to § 785.19, mandates that uncompensated meal periods "must be scheduled, occur at a regular time, and normally be thirty minutes or more." Lee v. Coahoma County, 937 F.2d 220, 225 (5th Cir.1991) (citing § 785.19 in discussing § 553.223). Not appearing in § 553.223(b), however, is § 785.19's statement: "The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating." Furthermore, § 553.223(b) goes on to illustrate circumstances involving law enforcement personnel that would run afoul, if not compensated, of the "completely relieved from duty" standard, citing the examples of personnel required to remain on call in barracks or similar quarters or assigned to extended surveillance duties, such as stakeouts. We find these differences instructive in determining the reach of the completely relieved from duty standard pursuant to § 553.223(b). Hence, a police officer must primarily be engaged in work-related duties during meal periods to warrant compensation therefor. That a police officer is on-call and has some limited responsibilities during meal periods does not perforce mean the officer is working. See Lee, 937 F.2d at 225; Leahy v. City of Chicago, 785 F.Supp. 724, 728-30 (N.D.Ill.1992). Instead, consistent with the language of § 553.223(b) and with traditional principles underlying FLSA,[16] a law enforcement employee is completely relieved from duty during a meal period, for purposes of § 553.223(b), when the employee's time is not spent predominantly for the benefit of the employer. Cf. Renfro v. City of Emporia, 948 F.2d 1529, 1538 (10th Cir.1991), cert. dismissed, --- U.S. ----, 112 S.Ct. 1310, 117 L.Ed.2d 510 (1992) (restrictions placed on on-call firefighters' personal pursuits created benefit to employer making time compensable under § 207(k)); Boehm v. Kansas City Power & Light Co., 868 F.2d 1182, 1185 (10th Cir.1989) (applying predominant benefit test to on-call power company employees, under § 207(a)); Norton v. Worthen Van Service, Inc., 839 F.2d 653, 654-55 (10th Cir.1988) (considering extent to which on-call van drivers were able to pursue personal activity, in appeal of back wages claim under FLSA).[17] If during meal periods a police officer's time and attention are primarily occupied by a private pursuit, presumably the procurement and consumption of food, then the officer is completely relieved from duty and is not entitled to compensation under FLSA. Conversely, a police officer is entitled to compensation for meal periods if the officer's time or attention is taken up principally by official responsibilities that prevent the officer from comfortably and adequately passing the mealtime.[18]
 
 
 55
 As literally extracted from § 785.19, the trial court's instruction no. 10 deprived the jury of an ample understanding of the issues and standards of the case. The instruction countenanced the misapprehension that the performance of any official duty, no matter how insignificant, during meal periods rendered the time compensable. We reject that result. We reverse and remand for a new trial on this issue.
 
 D. Preparation for pre-shift briefings
 
 56
 The supervisory Plaintiffs contest the jury's determination that they are not entitled to recover for time spent prior to pre-shift briefings.[19] These Plaintiffs, all of whom served either as sergeants or acting sergeants, seek compensation for the 15-30 minutes they allege they spent, prior to pre-shift briefings, preparing for those briefings. The 15-minute briefing, at the beginning of each 8 1/2-hour shift, is one of the responsibilities of a supervising sergeant. According to the testimony of the supervisory Plaintiffs, the briefings necessitate advance preparation in the form of reviewing daily intra-office communications and directives; sorting through paperwork on pending investigative and monitoring tasks, such as citizen letters regarding abandoned vehicles and citizen vacation watch notifications; inventorying administrative and court documents requiring attention, such as uncompleted reports and court subpoenas and notices; reviewing the duty roster; gathering information regarding what crimes have occurred during the previous shift; determining what cars are available; and, making car, patrol and meal period assignments. (R., Appendix to Brief of Appellants, exh. T at 320-23; Appellee's Supplemental Appendix, exh. G at 535, 564, & 635). This testimony by the supervising Plaintiffs was confirmed by one of Defendant's witnesses, who also has served as a supervising sergeant on the Shawnee police force. (R., Appellee's Supplemental Appendix, exh. G at 829).
 
 
 57
 Notwithstanding the quantity and uniformity of this testimony, the jury could have chosen not to believe that the supervisory Plaintiffs were, as a matter of fact, working prior to pre-shift briefings. Mere presence at the workplace does not require compensation if the employee freely chooses to put in additional time as a matter of personal preference or convenience. See Lindow v. United States, 738 F.2d 1057, 1061 (9th Cir.1984). Section 553.221(b) of the Federal Code of Regulations, Title 29, states:
 
 
 58
 Compensable hours of work generally include all of the time during which an employee is on duty on the employer's premises or at a prescribed workplace, as well as all other time during which the employee is suffered or permitted to work for the employer. Such time includes all pre-shift and post-shift activities which are an integral part of the employee's principal activity or which are closely related to the performance of the principal activity, such as attending role call, writing up and completing tickets or reports, and washing and re-racking fire hoses.
 
 
 59
 29 C.F.R. § 553.221(b). In carrying out its function of assessing witness credibility, the jury may have simply found that the supervisory Plaintiffs' pre-shift activities were not properly characterized as work. See Mumbower v. Callicott, 526 F.2d 1183, 1188 (8th Cir.1975). See also Handler v. Thrasher, 191 F.2d 120, 123 (10th Cir.1951) (compensation commensurate with number of hours employee worked for the employer's benefit); Wirtz v. Bledsoe, 365 F.2d 277, 278 (10th Cir.1966) (same). The jury could have properly concluded that the supervisory Plaintiffs failed to meet their burden of proof on this claim. The appellate court will not retry the issues or second guess the decision-making of the jury. It is the jury's exclusive province to assess the credibility of witnesses and determine the weight to be given to their testimony. White v. Conoco, Inc., 710 F.2d 1442, 1443 (10th Cir.1983). The supervisory Plaintiffs have failed to demonstrate a basis for overturning the jury verdict.[20]
 
 E. Liquidated damages and attorneys' fees
 
 60
 Finally, Defendant challenges the trial court's award of liquidated damages and attorneys' fees.[21] In light of the foregoing discussion, both of these awards should be revisited by the district court. In assessing Plaintiffs' claim for liquidated damages, the court should be guided by the "good faith" and "reasonable grounds" test as described in Renfro v. City of Emporia, 948 F.2d 1529, 1540 (10th Cir.1991), cert. dismissed, --- U.S. ----, 112 S.Ct. 1310, 117 L.Ed.2d 510 (1992). Of course, in evaluating any claim for attorneys' fees the court should follow the procedures required by Ramos v. Lamm, 713 F.2d 546 (10th Cir.1983).
 
 III. CONCLUSION
 
 61
 We conclude: that the district court did not err in submitting to the jury and instructing the jury on the issue of the establishment of a 28-day work period; that the jury verdict finding that the City did establish a 28-day work period was supported by substantial evidence; that the trial court did not abuse its discretion in denying a read-back of the testimony of two witnesses; that the trial court correctly calculated the rate at which Plaintiffs would be compensated for mealtimes, if adjudged compensable; the trial court did not err in submitting to the jury the issue of the compensability of meal periods; that the trial court did err in instructing the jury on the applicable standard for determining the compensability of meal periods; that the jury verdict finding that the supervisory Plaintiffs should not be compensated for time spent in preparation for pre-shift briefings should be affirmed; and, that following further proceedings in this case, the district court should reconsider Plaintiffs' claims for liquidated damages and attorneys' fees. Accordingly, we AFFIRM in part, REVERSE in part, VACATE the district court's award of liquidated damages and attorneys' fees, and REMAND for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable James A. Parker, Judge, United States District Court for the District of New Mexico, sitting by designation
 
 
 [1]
 Plaintiffs also asserted claims under the Kansas Minimum Wage and Maximum Hours law, Kan.Stat.Ann. § 44-1201 et seq., and under a common-law theory of implied contract of employment. Neither of these claims is at issue on appeal. (R., Appendix to Brief of Appellants, exh. A)
 
 
 [2]
 Those Plaintiffs are Billy W. Lamon, Paul E. Pagacz, Ronald W. Ward, Randy A. Peddicord, Michael G. McCoy and Mark A. Ashurst
 
 
 [3]
 The jury also found Plaintiffs were not entitled to recover under their implied contract claims, and did not consider the state statutory claim
 
 
 [4]
 Plaintiffs raise six issues on appeal: (1) whether the district court erred as a matter of law in denying Plaintiffs' renewed motion for summary judgment or directed verdict on the issue of Defendant's failure to establish a bona fide 28-day/171-hour work period under § 207(k) of FLSA; (2) whether there was substantial competent evidence to support the jury's determination that the Defendant did establish a bona fide 28-day/171-hour work period under § 207(k) of the FLSA; (3) whether the court erred in not allowing a read-back to the jury of Chief Hall's and Captain Hayselden's testimony; (4) whether the district court erred in instructing the jury as to Defendant's burden of proof on the issue of whether Defendant established a bona fide 28-day/171-hour work period; (5) whether the district court erred in instructing the jury on the establishment of a 28-day/171-hour work period by not including the requirement that a specified number of minimum hours in excess of which overtime will be paid must also be established; and, (6) whether there was substantial competent evidence to support the jury's verdict that the supervisory Plaintiffs were not working when preparing for the pre-shift briefing. Defendant raises five issues on appeal: (1) whether the district court erred in instructing the jury as to the applicable standard for determining whether the meal periods of the Plaintiffs were compensable work time within the meaning of FLSA; (2) whether the district court erred in not directing a verdict for Defendant finding that the meal periods of Plaintiffs were not compensable work time within the meaning of FLSA; (3) whether the district court erred in holding that FLSA required payment to Plaintiffs of their regular rate of pay for non-overtime hours worked; (4) whether the district court erred in awarding liquidated damages by not finding that the actions of Defendant were in good faith and that it had reasonable grounds for believing that its actions were not in violation of FLSA; and, (5) whether the district court erred in failing to employ the articulated step-by-step analysis as adopted by the Tenth Circuit to determine an appropriate award of attorneys' fees
 
 
 [5]
 The court's memorandum and order, entered July 10, 1990, 1990 WL 120831, granted Defendant's motion to bifurcate the issues of liability and damages
 
 
 [6]
 This question is raised principally by Plaintiffs' stated appeal issues nos. 1 through 5
 
 
 [7]
 This court has recognized that the administrative regulations adopted pursuant to FLSA "are entitled to great weight and should not lightly be set aside." Mitchell v. Greinetz, 235 F.2d 621, 625 (10th Cir.1956). FLSA regulations "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). See Hill v. United States, 751 F.2d 810, 813 (6th Cir.1984), cert. denied, Cummings v. United States, 474 U.S. 817, 106 S.Ct. 63, 88 L.Ed.2d 51 (1985)
 
 
 [8]
 If an employer chooses not to avail itself of the advantages available under the subsection, that does not mean its selection of the alternative regime did not really occur, as Plaintiff would have this court hold. Such an argument founders, for it is buoyed by the untenable notion that the City does not possess any rights under subsection (k) until those rights are exercised
 
 
 [9]
 The other two factors were whether the extension of the tour of duty was compensated and whether the firefighters agreed to the schedule change. The court found that the city had failed to compensate for the additional time, a consideration weighing in favor of finding the change not to be bona fide. Nonetheless, the court did not pass on the validity of the schedule change, because there existed genuine issues of material fact on the question of the firefighters' agreement to the schedule change, as required under 29 C.F.R. § 553.222(c). 682 F.Supp. at 531. See also Johnson v. City of Columbia, 949 F.2d 127, 129-30 (4th Cir.1991) (under similar facts, focussing on issue of agreement of firefighter to exclude sleep time, pursuant to 29 C.F.R. § 553.222(c))
 
 
 [10]
 The City's intention, even if it could be correctly characterized as self-promoting statutory maneuvering, certainly is not as flagrant as the city's motive in Rome, a pure manipulation to reduce that city's payment burden. Yet, despite the City of Rome's motive, the court found that the motive did not by itself make the city's employment scheme improper. Furthermore, in contrast to the facts in Rome, the City of Shawnee did not, as the City of Rome did, extend the tour of duty without compensation; the tour of duty was not extended at all. In contrast, the City of Shawnee continued to pay overtime commencing at a lower threshold than required under subsection (k). Finally, the City of Shawnee was not required to obtain the consent of its police force before instituting a § 207(k) program
 
 
 [11]
 Entitled "Exemptions," § 213 of FLSA describes in detail the numerous employment circumstances to which the FLSA requirements, most notably those contained in § 207, do not apply. For example, in Schoenhals, the employer sought exemption from FLSA's minimum wage and overtime mandates as a retail or service establishment having gross receipts of less than $250,000 a year, under § 213(a)(2) (repealed). 647 F.2d at 1081. Moreover, while even other subsections of § 207 may best be characterized as providing an exemption from subsection (a), see, e.g., Donovan v. Brown Equipment & Service Tools, Inc., 666 F.2d 148, 153 (5th Cir.1982) (regarding establishment of Belo plan, pursuant to § 207(f)), the instant subsection (k) plan is more properly denoted an optional regime, whose determination lies solely with the City's exercise of choice. The establishment of the instant plan was not dependent on the affirmative satisfaction of extrinsic conditions, as would be, for example, a subsection (f) plan or, indeed, some other subsection (k) plans, see e.g., Johnson v. City of Columbia, 949 F.2d 127, 129-30 (4th Cir.1991) (requiring express or implied agreement of firefighters to exclude sleep time under § 207(k) plan, pursuant to 29 C.F.R. § 553.222(c))
 
 
 [12]
 This question is raised by Defendant's stated appeal issue no. 3
 
 
 [13]
 These issues are before this court in the form of Defendant's stated appeal issues nos. 1 & 2
 
 
 [14]
 Part 785 of Title 29 of the Code of Federal Regulations consists of the Department of Labor, Wage and Hour Division's regulations generally applicable under FLSA to determinations of "hours worked." Section 785.19(a) addresses when meal periods are properly counted as work time:
 Bona fide meal periods. Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.
 
 
 [29]
 C.F.R. § 785.19(a) (citations omitted)
 
 
 [15]
 Section 553.223(b) provides that a subsection (k) employer
 ... may, in the case of law enforcement personnel, exclude meal time from hours worked on tours of duty of 24 hours or less, provided that the employee is completely relieved from duty during the meal period, and all the other tests in § 785.19 of this title are met. On the other hand, where law enforcement personnel are required to remain on call in barracks or similar quarters, or are engaged in extended surveillance activities (e.g., "stakeouts"), they are not considered to be completely relieved from duty, and any such meal periods would be compensable.
 
 
 [29]
 C.F.R. § 553.223(b). A "tour of duty" is "the period of time during which an employee is considered to be on duty for purposes of determining compensable hours." Id. at § 553.220(a)
 
 
 [16]
 See Tennessee C., I. & R. Co. v. Muscoda, 321 U.S. 590, 598, 64 S.Ct. 698, 703, 88 L.Ed. 949 (1944) (regarding time required by miners for subterranean travel, work means "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business"); Armour & Co. v. Wantock, 323 U.S. 126, 133-34, 65 S.Ct. 165, 168-69, 89 L.Ed. 118 (1944) (applying predominant benefit test to time spent on employer's premises by fireguards); Skidmore v. Swift & Co., 323 U.S. 134, 138-39, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944) (resolution of compensation issue turned on extent to which fireguards on employer's premises could engage in personal activities while on call); Mitchell v. Greinetz, 235 F.2d 621, 623 (10th Cir.1956) (applying predominant benefit test to weavers' 15-minute rest period); Handler v. Thrasher, 191 F.2d 120, 122 (10th Cir.1951) (applying predominant benefit test to on-call oil field pumper); F.W. Stock & Sons, Inc. v. Thompson, 194 F.2d 493, 496-97 (6th Cir.1952) (time spent during lunch period predominantly for employer's benefit found to be compensable working time)
 
 
 [17]
 This circuit has made clear that under FLSA the "test to determine whether on-call time is compensable 'requires consideration of the agreement between the parties, the nature and extent of the restrictions, the relationship between the services rendered and the on-call time and all surrounding circumstances.' " Renfro v. City of Emporia, 948 F.2d 1529, 1537 (10th Cir.1991) (quoting Boehm v. Kansas City Power & Light Co., 868 F.2d 1182, 1185 (10th Cir.1989))
 
 
 [18]
 In coming to this conclusion, we note that our interpretation of the "completely relieved from duty" standard only applies to that phrase as used in § 553.223(b). For that reason, with respect to the application of the "completely relieved from duty" standard in Wahl v. City of Wichita, 725 F.Supp. 1133 (D.Kan.1989) and Nixon v. City of Junction City, 707 F.Supp. 473 (D.Kan.1988), both of which relied on § 785.19 in ruling that meal periods of police officers were compensable, we make no comment, except for noting the following. While both decisions adhered to a "completely relieved from duty" standard, the court in Wahl, after citing the predominant benefit test, stated: "What matters in meal period cases is whether the employee is subject to real limitations on his personal freedom which inure to the benefit of his employer." 725 F.Supp. at 1144. In Nixon the court found that the plaintiff police officers in that case performed "substantial duties" during their lunch periods. 707 F.Supp. at 478. Moreover, our contrasting of the two sections, § 553.223(b) and § 785.19, does not mean that the "completely relieved from duty" standard as used in the latter section should necessarily take on a different meaning than that of the former section. See, e.g., Hill v. United States, 751 F.2d 810, 813-14 (6th Cir.1984) (applying predominant benefit test to meal periods of letter carrier under § 785.19)
 
 
 [19]
 This question is raised by Plaintiffs' stated appeal issue no. 6
 
 
 [20]
 As an aside, we note that the jury may have been misled by an incorrect instruction applying to the supervisory Plaintiffs' claim. Instruction no. 9, after delineating the elements necessary for the supervisory Plaintiffs to prove their preparation time claims, contains the curious statement: "if the defendant has satisfied you by a preponderance of the evidence that it is exempt from the overtime pay law, then your verdict should be for the defendant." (R., Appendix to Brief of Appellants, exh. I). This statement is incorrect. The establishment of a § 207(k) regime does not mean the City does not have to compensate an employee for additional time worked. Plaintiffs, however, did not raise the propriety of the instruction as an issue on appeal. Rather, Plaintiffs chose to raise the issue as a failure of proof, as a lack of substantial evidence in support of the verdict, when it was the Plaintiffs who bore the burden of proof
 
 
 [21]
 These questions are raised by Defendant's appeal issues nos. 4 & 5