**PUBLISH**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 11, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DANIEL T. PAULY, as personal
representative of the estate of Samuel
Pauly, deceased; DANIEL B. PAULY,

    Plaintiffs - Appellees,

v.

RAY WHITE; MICHAEL MARISCAL;
KEVIN TRUESDALE,

    Defendants - Appellants,

and

STATE OF NEW MEXICO
DEPARTMENT OF PUBLIC SAFETY,

    Defendant.

No. 14-2035

_____

**ORDER**
_____

Before **TYMKOVICH**, Chief Judge, **KELLY**, **BRISCOE**, **LUCERO**, **HARTZ**,
**GORSUCH**, **HOLMES**, **MATHESON**, **BACHARACH**, **PHILLIPS**, McHUGH and
**MORITZ**, Circuit Judges.
_____

    This matter is before the court on the appellants' *Petition for Rehearing and*

*Rehearing En Banc*. We also have a response from the appellees.

Upon consideration, the request for panel rehearing is denied by a majority of the original panel members. Both the petition and response were also transmitted to all of the judges of the court who are in regular active service. Upon that submission, a poll was called. Via an equally divided vote, the poll did not carry. Consequently, the request for en banc consideration is also denied. *See* Fed. R. App. P. 35(a)(noting "[a] majority of the circuit judges who are in regular active service" may order en banc rehearing).

Chief Judge Tymkovich, as well as Judges Kelly, Hartz, Gorsuch, Holmes and Moritz would grant the en banc petition. Judge Phillips has filed a separate concurrence in support of the denial of en banc rehearing, which Judge Briscoe joins. Judge Hartz and Judge Moritz have written separately in dissent. Judge Gorsuch joins Judge Hartz' dissent, and Judges Kelly, Hartz, Gorsuch and Holmes join Judge Moritz' dissent.

Entered for the Court

Elisabeth A. Shumaker

ELISABETH A. SHUMAKER, Clerk

2

No. 14-2035, *Pauly v. White, et al.*

**PHILLIPS**, Circuit Judge, joined by **BRISCOE**, Circuit Judge, concurring in the denial

of rehearing en banc.

I barely recognize the majority panel opinion when reading Judge Moritz's dissent

from en banc denial (Dissent). And the reason, it turns out, is simple. Unlike the Dissent,

the majority opinion credits the district court's findings and properly applies disputed

evidence in favor of the plaintiffs. The Dissent and panel dissent cannot change the

majority's holding by substituting its own facts after resolving the evidence in favor of

the officers and against the plaintiffs. Here are some examples of how the Dissent does

so:

- The Dissent fights the district court's finding that Officer White "took cover," App. at 680, doing its own fact finding (without basis) to reduce the cover to "some form of cover." I understand why it's important how much cover Officer White had when firing a fatal shot, but I don't understand challenging the district court's fact finding. *See Johnson v. Jones*, 515 U.S. 304, 319 (1995) (requiring the courts of appeals to "simply take, as given, the facts that the district court assumed when it denied summary judgment" when a defendant challenges the "purely legal" clearly-established-law prong).

- The Dissent claims that a "suspect" (suspect in what is unknown since the officers readily admit they had no probable cause to arrest anyone) "point[ed] a gun directly at that officer [Officer White]." Again, this gives the officers the benefit of disputed evidence. The district court found that from inside his lighted house Samuel Pauly may not have been able to see Officer White behind a stone wall 50 feet away on a dark, rainy night. App. at 685. The district court recounted the officers' account of Samuel's activity immediately before being killed, which had Samuel pointing a gun in Officer White's direction before being shot and killed. Samuel would have done so simply by pointing a gun out the front window—even if simply as a tactic to dissuade the intruders after they yelled, "Come out or we're coming in." App. at 678.

- The Dissent agrees that Officer Mariscal fired the third of four shots that night (the first two were Daniel Pauly's warning shots out the back of the house). Also from a covered position behind a truck about 50 feet from the home, Officer Mariscal fired at Samuel Pauly inside his home. Officer White fired the fourth shot, which killed Samuel Pauly. No one disputes that four shots were fired. Yet Officer White maintains that Samuel Pauly fired at him first, a claim the Dissent neither acknowledges nor adopts. App. at 145-47. In measuring the objective reasonableness of Officer White's use of deadly force, the jury will be free to consider this apparently false claim of self-defense. *See Lamon v. City of Shawnee*, 972 F.2d 1145, 1159 (10th Cir. 1992) (concluding that the jury alone assesses witnesses' credibility and determines the weight to give to their testimony).

- The Dissent characterizes Officer White's shooting as a "split second judgment[]." Officer Mariscal's belt recorder shows that a full five seconds passed between his missed third shot at Samuel Pauly and Officer White's fatal fourth shot. Mariscal Audio Recording at 0:09–0:20.

- The Dissent says that a second "suspect" was "loose and ha[d] fired shots near a second officer [Officer Truesdale]." In fact, it's undisputed that Daniel Pauly remained in the home throughout the encounter. And Daniel Pauly fired two shotgun warning blasts from the *back* of the house to warn the intruders after they'd yelled, "Come out or we're coming in." App. at 678. Nothing in the record supports the statement that Daniel Pauly "fired shots near a second officer" or that Daniel even ever saw Officer Truesdale somewhere near the back corner of the house when he fired the shotgun into a tree behind the house.

- The panel dissent shrouds Officer White in ignorance because he was the third officer to arrive at the Pauly's house. It says that "within seconds" of arriving, Officer White heard one of the Pauly brothers yell, "We have guns." *Pauly v. White*, -- F.3d --, 2016 WL 502830, at *23 (10th Cir. 2016) (Moritz, J., dissenting). But a police report after the incident says that Officer White heard "We have guns" within two-and-a-half minutes of arriving. App. at 118. And here, it's important to remember that when one of the Pauly brothers yelled, "We have guns," he was responding to the police's yelling, "Come out or we're coming in" (while insufficiently identifying themselves as police officers). App. at 678. Thus, it's an open question what Officer White heard that night, the sort of question a jury should resolve.

2

The Dissent exaggerates the reach of the majority opinion's holding. By the Dissent's telling, the majority opinion would deny qualified immunity to an officer imminently exposed to gunfire from a suspect pointing a gun directly at the officer—even when another dangerous suspect is on the loose nearby. Moreover, according to the Dissent, the majority's rule would apply whether this happened in broad daylight and from close range. The short answer is that the majority opinion says no such thing. The opinion is limited to its facts. And its facts properly considered are those stated in the opinion, giving credit to the district court's findings and read in favor of the plaintiffs. If the facts were those stated in the Dissent and the panel dissent, this would be a very different case for our review.

Resolving the evidence in plaintiffs' favor—and not the officers' favor—leaves us with facts upon which a jury could reasonably find that Officer White killed Samuel Pauly for no good reason and while not endangered. Officer White himself testified that he couldn't say what Samuel Pauly was doing in the five seconds before Officer White's fatal shot. App. at 144. Officer White explained his failure to observe whether Samuel Pauly had lowered his gun by saying that he had been "aiming at center mass."[1] *Id.*

---

[1] In Judge Hartz's dissent, he describes Officer White as being "pinned down" while (as I understand it) Samuel Pauly pointed a firearm in his direction. In my view, that contains two mistaken assumptions dependent upon resolving fact disputes in the officers' favor. First, despite the district court's stated doubts, Judge Hartz's dissent assumes that Samuel Pauly could have seen Officer White behind a stone wall 50 feet away from his lighted living room as he looked into a dark, rainy night. Second, it assumes that Samuel Pauly was still pointing his firearm outside toward Officer White after being shot at by Officer Mariscal. Not even Officer White says that. As mentioned above, Officer White testified that he didn't know whether Samuel Pauly continued to point his gun outside after Officer Mariscal shot at him. App. at 144. On a separate point, Judge Hartz says that it's

3

Officer White concedes that he never warned Samuel Pauly to put down his gun. Our cases have denied qualified immunity to officers who have shot with more urgent need to do so. *See, e.g.*, *Tenorio v. Pitzer*, 802 F.3d 1160, 1166 (10th Cir. 2015) (denying qualified immunity for an officer who shot and wounded a man armed with a knife who was approaching officers from across a living room while refusing to comply with their repeated orders to drop the knife), *pet. for cert. filed*, 84 U.S.L.W. 3355 (U.S. Dec. 16, 2015) (No. 15-795).

In short, I believe that it is "beyond debate" that an officer can't shoot and kill without good cause and while not endangered. Contrary to the Dissent's position, the majority doesn't define excessive force at "a high level of generality" by including within excessive force such an egregious situation (and, of course, it's up to the jury to decide what happened that night). *See Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011). Borrowing some of the Dissent's final words, I'd say that granting officers qualified immunity here—when there's a genuine issue of material fact whether the killing was unjustified—would create a new precedent with potentially deadly ramifications for *citizens* in this circuit.

---

undisputed that a home occupant (Daniel Pauly) "fired two shots to ward off two of White's fellow officers." But Daniel Pauly certainly disputes that he knew the invaders threatening to illegally invade his home were police officers.

4

No. 14-2035, *Pauly v. White, et al.*

**HARTZ**, Circuit Judge, joined by **GORSUCH**, Circuit Judge, dissenting from the denial of rehearing en banc:

I join Judge Moritz's dissent. It is not disputed that shortly after Officer White approached the home, an occupant fired two shots to ward off two of White's fellow officers. I am unaware of any clearly established law that suggests, much less requires, that an officer in that circumstance who faces an occupant pointing a firearm in his direction must refrain from firing his weapon but, rather, must identify himself and shout a warning while pinned down, kneeling behind a rock wall, hoping that no one will be aiming in his direction when he decides to look around or move.[1] Perhaps the Supreme Court can clarify the governing law.

I express no view on whether White's fellow officers are entitled to qualified immunity on this record.

---

[1] The Supreme Court has "stressed that a court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2474 (2015) (internal quotation marks omitted). And "in addition to the deference officers receive on the underlying constitutional claim, qualified immunity can apply in the event [a] mistaken belief was reasonable," *Saucier v. Katz*, 533 U.S. 194, 206 (2001), whether the error was "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact," *Pearson v. Callahan*, 505 U.S. 223, 231 (2009) (internal quotation marks omitted). The reasonable beliefs of the *victim* are, of course, not the issue.

No. 14-2035, *Pauly v. White, et al.*

**MORITZ**, Circuit Judge, joined by **KELLY**, **HARTZ**, **GORSUCH**, and **HOLMES**, Circuit Judges, dissenting from the denial of rehearing en banc.

With the issuance of the panel majority's opinion, the clearly established law in this circuit requires an officer who has taken some form of cover to hesitate and call out a warning before using deadly force—even as a suspect points a gun directly at that officer, even as a second suspect is loose and has fired shots near a second officer, and even as a third officer has already shot and missed the suspect pointing the gun at the first officer. The majority acknowledges the Court's admonitions against second-guessing officers' split-second judgments and defining clearly established law at a high level of generality. But then it flouts them, first by finding Officer White's use of deadly force objectively unreasonable, and second by finding his actions violated clearly established law. The majority's fundamentally flawed decision doesn't just violate existing precedent; it creates new precedent with potentially deadly ramifications for law enforcement officers in this circuit.