17 F.3d 1436
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Cecilia CORPUS, surviving spouse of Arturo Corpus, Deceased,
Plaintiff-Appellant,
v.
James KENNEDY, individually and in his official capacity;
City of Oklahoma City, a municipal corporation; Bennie
Nichols and Ray Grimes, individually and in their official
capacities, Defendants-Appellees.
 No. 93-6056.
 United States Court of Appeals, Tenth Circuit.
 Feb. 17, 1994.
 
 1
 Before TACHA and BARRETT, Circuit Judges, and KANE*, District Judge.
 
 ORDER AND JUDGMENT[1]
 
 2
 Cecilia Corpus appeals from the judgment entered in favor of the City of Oklahoma City, Oklahoma, and three of its police officers. Corpus brought this action pursuant to 42 U.S.C.1983 and Oklahoma common law on behalf of herself and her two minor children following the shooting death of her husband, Arturo. A summary of the relevant facts will facilitate our review.
 
 
 3
 On May 29, 1991, Arturo, a twenty-five year old Mexican national, entered an Oklahoma City Circle K store shortly after midnight to purchase a pack of cigarettes. Arturo was sitting outside the store smoking a cigarette when Oklahoma City Police Officer James Kennedy arrived at the store to inquire about a beer theft. Officer Kennedy had previously taken Randall Kimbro into custody for public intoxication and Kimbro was seated in the back seat of Officer Kennedy's patrol car. Oklahoma Police Officer Raymond Grimes arrived at the Circle K shortly thereafter in a separate car.
 
 
 4
 When Officer Kennedy entered the store, clerk Robin Pollard related that the store had not been robbed. Pollard also asked Officer Kennedy to check on Arturo and ask him to leave because she felt that he had been sitting outside the store too long and that he was planning to rob the store. When Pollard pointed Arturo out, he got up and began to walk away. Officer Kennedy then exited the store and ordered Arturo to stop; Arturo did not stop. During this time, Officer Bennie Nichols joined Officers Kennedy and Grimes.
 
 
 5
 The three officers followed Arturo into a field. The evidence as to what transpired thereafter is in substantial conflict. Kimbro testified on behalf of Corpus that the officers yelled at Arturo while he retreated with his hands in the air and that Officer Kennedy fired one shot and killed Arturo. The officers testified that Arturo began kicking out and lashing at Officer Kennedy with an unknown object in his hand and that Officer Kennedy fired one shot and killed Arturo after Arturo attacked and lunged at him.
 
 
 6
 At the time of the incident, Officers Kennedy, Grimes, and Nichols ranged in size from 175 to 240 pounds. All three were armed with handguns. Arturo, who had no criminal record, was 5'5" in height and weighed 98 pounds. The unknown object in Arturo's hand was a rusty, flattened piece of pipe, without sharp corners, approximately 2" by 3", weighing less than six ounces. Kimbro witnessed the shooting and gave a videotaped statement approximately five and one-half hours after it occurred.
 
 
 7
 Corpus subsequently filed suit against the City and Officers Kennedy, Nichols, and Grimes, individually, and in their official capacities, alleging that the use of deadly force which resulted in Arturo's death was unreasonable and in violation of 1983 and Oklahoma's common law offense of battery. Corpus sought damages of $10,250,000.00, costs, and pre and post judgment interest.
 
 
 8
 Prior to trial, the court granted Oklahoma City's motion to bifurcate Corpus' 1983 claims against it and the officers pursuant to the procedure used in Los Angeles v. Heller, 475 U.S. 796 (1986). Thereafter, a jury trial was held from September 30 through October 7, 1992, for the purpose of determining the liability of the officers on Corpus' 1983 and battery claims as well as the liability of Oklahoma City on Corpus' battery claims, with the understanding that Corpus' 1983 claims against Oklahoma City would be considered in a second trial if the verdicts against any of the officers made such a trial necessary. (Answer Brief of Appellee, The City of Oklahoma City, at 2-3 and n. 1).
 
 
 9
 The jury returned verdicts in favor of the three officers on Corpus' 1983 and battery claims. Thereafter, the district court entered judgment in favor of Oklahoma City and the three officers and against Corpus.
 
 
 10
 Corpus moved for a new trial alleging that: the court erred in allowing defense counsel to use and display an enlarged copy of a portion of the Oklahoma mental health statute; the court's use of force instruction was inadequate; counsel for Oklahoma City improperly commented on facts not in evidence in his closing arguments; the court improperly relied on defense counsel's arguments that Kimbro was biased in excluding the video taped interview of Kimbro; defense counsel improperly appealed to the jury's sympathy toward police officers; and the court improperly allowed defense counsel to elicit testimony concerning a private reprimand received by her expert witness, Dennis Berglan.
 
 
 11
 The district court considered each of Corpus' allegations and thereafter denied Corpus' motion for a new trial in a detailed order. Corpus subsequently filed a notice of appeal from "the jury verdict entered in favor of the Defendants and against the Plaintiff ... and the Order of the District Court denying Plaintiff's Motion for New Trial." (Appellant's Appendix, Vol. VIII, Tab 38 at 001635).
 
 
 12
 On appeal, Corpus reasserts the allegations of error set forth in her motion for a new trial: (1) the court's instruction on the use of deadly force requires reversal; (2) the court erred by allowing appellees to present evidence of legal standards; (3) the closing arguments of appellees' counsel requires reversal; (4) the improper impeachment of Dennis Berglan, her expert witness, requires reversal; and (5), the exclusion of Kimbro's video was prejudicial.
 
 
 13
 Our review is limited to determining whether the district court's denial of Corpus' motion for a new trial constituted a gross abuse of discretion: "[T]he trial judge has broad discretion in deciding whether to grant a new trial, and the court's ruling on such a motion will not be disturbed on appeal unless there is 'a gross abuse of discretion.' " Capstick v. Allstate Insurance Company, 998 F.2d 810, 819 (10th Cir.1993) (quoting Whitely v. OKC Corp., 719 F.2d 1051, 1058 (10th Cir.1983)).
 
 I.
 
 14
 Corpus contends that the district court's Instruction 12 on the use of deadly force was erroneous and prejudicial and requires reversal of the jury's verdict.
 
 
 15
 In reviewing challenged jury instructions, we are required, after examining the record as a whole, to determine whether the instructions "correctly state the applicable law and provide the jury with ample understanding of the issues and standards of the case." Denbo v. United States, 988 F.2d 1029, 1034 (10th Cir.1993) (quoting Lamon v. City of Shawnee, Kansas, 972 F.2d 1145, 1153 (10th Cir.1992), cert. denied, --- U.S. ---- (1993) (citations omitted)). Moreover, "[r]eversal is mandated only if an error in the jury instructions 'is determined to have been prejudicial, based on a review of the record as a whole.' " Id. (quoting Street v. Parham, 929 F.2d 537, 539-40 (10th Cir.1991) (citations omitted)).
 
 
 16
 Corpus contends that the erroneous portion of Instruction 12 is as underlined below:
 
 
 17
 * * *
 
 
 18
 * * *
 
 
 19
 In making an investigatory stop or arrest, a law enforcement officer has the right to use some degree of physical coercion or threat to effect the stop or arrest. A police officer may use deadly force if he reasonably believes an individual is armed and poses a threat of serious bodily harm to the officer or others. To determine whether the force used to effect a particular seizure is reasonable under the Fourth Amendment, you must balance the nature and quality of the intrusion on the individual's Fourth Amendment rights against the opposing governmental interests. You are instructed that the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. Whether the force used in making an arrest is reasonable is to be determined in light of all the facts and circumstances existing and known to the officer at the time the force was used, including the severity of the crime for which the suspect is being arrested, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, in light of the circumstances which existed at the time rather than by hindsight. ..."
 
 
 20
 (Appellant's Appendix, Vol. VII, Tab 23 at 001428-29).
 
 
 21
 Corpus contends that "[t]he instruction need not and should not have continued beyond the statement that--'A police officer may use deadly force [only] if he reasonably believes an individual is armed and poses a threat of serious bodily harm to the officers or others.'--provided that the word 'only' should have been added to make the instruction complete. The additional language is gratuitous and misleading." (Appellant's Brief in Chief at 12).
 
 
 22
 Corpus argues that the court's instruction misstated the law because it was derived from Graham v. Connor, 490 U.S. 386 (1989), which set forth the standard for the use of non-deadly force, as opposed to Tennessee v. Garner, 471 U.S. 1 (1985), which set forth the standard for the use of deadly force. Notwithstanding this argument, Corpus nevertheless acknowledges that "[i]n truth, Graham v. Conner and Tennessee v. Garner are completely consistent in both their method of analysis and their result," (Appellant's Reply Brief at 9), and that "Tennessee v. Garner specifically used the balancing test which was more completely articulated in Graham." Id. Corpus also contends that the instruction misled the jury because it admonished the jurors against using hindsight and that "[t]o tell a jury that it may not use 'hindsight,' is to tell a jury it may not judge the acts in question." (Appellant's Brief In Chief at 17).
 
 
 23
 Appellee officers respond that Instruction 12 carefully combined the requirements of Graham and Garner and afforded the jury specific guidance as to when deadly force may be used. Appellee officers also respond that the language that the jury must "judge the use of force from the perspective of a reasonable officer at the scene, in light of the circumstances which existed at the time rather than by hindsight" did not prejudice the verdict. Appellee City of Oklahoma City responds that Instruction 12 is largely based on language from Graham and correctly tells the jury that they must judge an officer's use of force from the perspective of a reasonable officer on the scene and not from hindsight. We agree.
 
 In Graham, the Court opined:
 
 24
 Today we make explicit what was implicit in Garner's [Tennessee v. Garner ] analysis, and hold that all claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.... Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to affect it.... Because '[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application' ... its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. See Tennessee v. Garner, 471 U.S., at 8-9 (the question is 'whether the totality of the circumstances justifie[s] a particular sort of ... seizure').
 
 
 25
 The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.... The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation.
 
 
 26
 490 U.S. at 395-97.
 
 
 27
 A review of Instruction 12 demonstrates that it was in accord with Graham and Garner and correctly stated "the applicable law and provide[d] the jury with [an] ample understanding of the issues and standards of the case." Denbo, 988 F.2d at 1034 (quoting Lamon v. City of Shawnee, Kansas, 972 F.2d 1145, 1153 (10th Cir.1992) (citations omitted)). Accordingly, we reject Corpus' allegations that it contained gratuitous language, misstated the law, and misled the jury. We hold that the district court's instruction properly charged the jury and that the court's denial of Corpus' motion for new trial based on the alleged inadequacy of this instruction did not constitute a gross abuse of discretion.
 
 II.
 
 28
 Corpus contends that the district court erred by allowing defendants to present evidence of legal standards. Specifically, Corpus contends that the court erred when it allowed appellees to display an enlargement of a portion of the Oklahoma mental health statute during the trial. Significantly, the enlargement was not admitted into evidence. (Appellant's Appendix, Tab 37, Order, at 2). Rather, it was used only as a visual aid. Id.
 
 
 29
 During direct examination, Corpus' expert witness, Dr. Kirkham, a criminologist, testified, inter alia, that police officers dealing with mentally ill and distraught people should not crowd them, but rather, should give them a little space. (Appellant's Appendix, Vol. III at 000477-78). Dr. Kirkham also testified that in his opinion, the actions of the three officers violated "the standards relative to the handling of this type of individual." Id. at 000484.
 
 
 30
 During cross-examination, Dr. Kirkham testified that "[i]f there came a point in time where the officers concluded that the person was mentally ill--and, again, without possessing any familiarity with Oklahoma law, I assume you have a statute in this state whereby someone who is a danger to themselves or others can be taken into protective custody--then they would indeed have a duty to take such a person into custody." (Appellant's Appendix, Vol. III at 515-16). At that time, defendants' counsel displayed an enlarged copy of Title 43A Okla. Stat. 5-207(b). Corpus' objection was denied and defendants' counsel continued his cross-examination by asking Dr. Kirkham to read the statute. Section 5-207(b) provides:
 
 
 31
 Any peace officer who reasonably believes that a person is a person requiring treatment, an alcohol dependent person, or a drug dependent person to a degree that immediate emergency action is necessary shall take said person into protective custody. The officer shall make every reasonable effort to take the person into custody in the least conspicuous manner.
 
 
 32
 Defendants' expert witness subsequently used the enlargement of the statute in his testimony to explain to the jury the statutory duty of police officers to take mentally ill persons into custody and defendants' counsel displayed the enlargement during his closing arguments. Corpus argues that the use of the enlarged copy of the statute created such prejudice as to require reversal.
 
 
 33
 In rejecting this identical argument in considering Corpus' motion for a new trial, the district court found:
 
 
 34
 In this case, the statute in question was accurately recited, and accurately reflects current Oklahoma law. The evidence offered by both sides in this case made the statute applicable. The Plaintiff offered evidence that at the time of the shooting, the decedent had not committed any crime, and was not suspected of any crime. Plaintiff's expert witness testified that the officers should have "backed away" from the decedent rather than continue to pursue him. Clearly Plaintiff placed in issue the officers' decision to detain, and their attempts to detain, the decedent. The Defendants' testimony indicated that the officers attempted to stop the decedent because of his strange behavior, which led them to suspect that the decedent was mentally ill or under the influence of some drug. Under the circumstances the statute in question was relevant to the case, as was the testimony of defendant's expert witness, referring to the statute in explaining the officers' duties in this case.
 
 
 35
 (Appellant's Appendix, Vol. VIII at 001628-29).
 
 
 36
 These findings are supported by the record. We hold that the district court's denial of Corpus' motion for a new trial based on defense counsel's limited use of the enlarged copy of the statute did not constitute a gross abuse of discretion particularly when, as here, the enlarged copy was not introduced into evidence and was used only as a visual aid.
 
 III.
 
 37
 Corpus contends that the closing argument of defendants' counsel was prejudicial and requires reversal. Corpus contends that reversible error occurred when defense counsel improperly commented on two facts not in evidence, the district attorney's report declining to prosecute defendant officers and Corpus' independent right to sue the investigating officers, and when defense counsel appealed to the jury to be sympathetic to the police officers.
 
 
 38
 The district court rejected these same contentions in denying Corpus's motion for a new trial finding that "[t]aken in their proper context, the comments complained of are fair comment upon the evidence adduced at trial." (Appellant's Appendix, Vol. VIII, Tab 37 at 001632). Specifically, the court found:
 
 
 39
 The testimony indicating that the investigative reports and photographs were submitted to the District Attorney's office, together with the lack of evidence of any response by the District Attorney's office, tends to refute the opinion evidence of Plaintiff's expert that these reports revealed an "obvious cover-up" of the facts surrounding the decedent's death.
 
 
 40
 Plaintiff further complains of defense counsel's comments to the effect that the officers who investigated the shooting could be sued. The obvious purpose of this comment, taken in context, was to point out to the jury that the investigating officials were not on trial, that the issues they were to decide did not include whether the investigation was adequate, and that the Defendant officers were not the ones conducting the investigation into the death of Arturo Corpus. Much of Plaintiff's evidence at trial focused upon the investigation into the death of Arturo Corpus. This comment was neither egregiously improper nor unfairly prejudicial, and does not warrant a new trial.
 
 
 41
 * * *
 
 
 42
 * * *
 
 
 43
 The Plaintiff next complains that defense counsel improperly appealed to the jury's sympathy toward police officers. The Plaintiff complains of counsel's comments that while ordinary citizens can call 911 and the police will come, the police can't call 911; that the police are the public's first line of defense against criminals; and that police officers place their lives on the line each time they don their uniform. The Court finds that the remarks complained of were not so egregiously improper as to warrant a new trial.
 
 
 44
 (Appellant's Appendix, Vol. VIII, Tab 37 at 001632-33).
 
 
 45
 We do not reverse for improper closing argument unless it obviously prejudiced one of the parties. Slane v. Jerry Scott Drilling Company, Inc., 918 F.2d 123, 128 (10th Cir.1990); Smith v. Atlantic Richfield Company, 814 F.2d 1481, 1488 (10th Cir.1987). Inasmuch as these arguments were presented to and rejected by the district court in denying Corpus' motion for a new trial, we will not disturb the district court's ruling absent a gross abuse of discretion.
 
 
 46
 Significantly, Corpus' expert witness Berglan first developed the potential role of the District Attorney. (Appellant's Appendix, Vol. III at 000580-81). Similarly, it was Berglan who "pointed [out] the many deficiencies and inconsistencies present within the ... investigative materials." (Appellant's Brief in Chief at 41). Under such circumstances, we agree with the district court that the challenged testimony was nothing more than "fair comment upon the evidence adduced at trial." (Appellant's Appendix, Vol. VIII, Tab 37 at 001632). We hold that the district court's denial of Corpus' motion for a new trial predicated on her allegations of improper closing argument did not constitute a gross abuse of discretion.
 
 IV.
 
 47
 Corpus contends that the improper impeachment of her police expert witness, Dennis Berglan, requires reversal. Corpus cites to K-B Trucking Company v. Riss International Corporation, 763 F.2d 1148, 1156 (10th Cir.1985) for the proposition that "error in the admission or exclusion of evidence is harmless if it does not affect the substantial rights of the parties, and the burden of demonstrating that substantial rights were affected rests with the party asserting error." We agree. However, inasmuch as this identical allegation of error was presented to and rejected by the district court in denying Corpus' motion for a new trial, we will not disturb the district court's ruling absent a gross abuse of discretion.
 
 
 48
 Corpus offered Berglan as an expert knowledgable about police procedures. In qualifying Berglan, Corpus reviewed Berglan's twenty-year career as an Oklahoma City policeman commencing in 1962 as a patrol officer, his promotion to detective assigned to primarily homicide and robbery, his promotion to patrol division sergeant in 1975, his promotion to lieutenant and assignment as commander in charge of homicide and robbery in 1979 during which he commanded approximately thirty detectives, his promotion to captain and assignment as shift commander of the patrol division, and his receipt of a plaque as officer of the year in 1979. (Appellant's Appendix, Vol. III at 000570-76).
 
 
 49
 During cross-examination of Berglan, the district court, over objection, allowed counsel for Oklahoma City to inquire about a reprimand that Berglan had received in 1979 for improper supervision during his tenure as a captain. The district court allowed the cross examination after noting that "you [Corpus' counsel] have gone in and part of your qualifications of him are what happened 25 years ago, and the fact that he's got all this experience." (Appellant's Appendix, Vol. III at 000654). Berglan subsequently testified during redirect examination that he had received one remand during his twenty year career with the Oklahoma City Police department, id. at 000661, and that he was, to his understanding, "the most decorated police officer in the history of the Oklahoma City Police Department [when he left the police force]." Id.
 
 
 50
 We agree with the district court that Corpus, having relied on Berglan's 25 years as a police officer and his experiences related thereto in qualifying him as an expert, could not preclude defendants from inquiring into a reprimand he received during his tenure as a captain. Corpus clearly "opened the door," Whitely v. OKC Corp., 719 F.2d 1051, 1055 (10th Cir.1983), to Berglan's experiences and qualifications as an expert on police matters. As such, defendants' inquiry into the reprimand was proper. An appellant may not complain on appeal of errors which he induced or invited. Gundy v. United States, 728 F.2d 484, 488 (10th Cir.1984); Whitely, 719 F.2d at 1055 (court of appeals will not reverse decision on appeal when appellant complains of possible error which he himself induced).
 
 
 51
 We hold that the district court's denial of Corpus' motion for a new trial predicated on her allegations of improper impeachment of Berglan did not constitute a gross abuse of discretion.
 
 V.
 
 52
 Corpus contends that the district court's refusal to allow the jury to view Kimbro's videotaped statement was reversible error.
 
 
 53
 Corpus argues that the video was a unique and critical piece of evidence, the video was essential to a proper determination of Kimbro's credibility, and that the exclusion of the video was an abuse of discretion requiring reversal. Appellees respond that the video was properly excluded because it was cumulative evidence and was evidence which was more prejudicial than probative since Kimbro was in a highly agitated state at the time the video was made. Inasmuch as the admissibility of the video was considered by the district court in denying Corpus' motion for a new trial, we will not disturb the court's ruling absent a gross abuse of discretion.
 
 
 54
 Kimbro gave a videotaped statement approximately five and a half hours after the shooting. The district court heard arguments on the admissibility of the video during en camera proceedings prior to the trial. (Appellant's Appendix, Vol. I at 36). At that time, the court, after rejecting Corpus' arguments that the tape be admitted as a business record or official report and after stating that "[t]he only thing I could conceive of it might be a prior consistent statement of the witness," id. at 38, took the matter under advisement.
 
 
 55
 During the trial and immediately after Kimbro had been sworn as a witness and placed at the Circle K at the time of the shooting, the following colloquy transpired between the court and counsel:
 
 
 56
 THE COURT: I take it you're going to qualify this video as a past recollection recording.
 
 
 57
 COUNSEL FOR CORPUS: Yes, Your Honor.
 
 
 58
 THE COURT: I don't think that's a problem as to if he wants to refresh his memory. Now, I think that's probably not appropriate use of a past recollection.
 
 
 59
 COUNSEL FOR OFFICERS: If they're not going to play the video, we won't go into priors.
 
 
 60
 COUNSEL FOR CORPUS: The--well, can I make it quick.
 
 
 61
 THE COURT: I take it he has been deposed before and has testified about what he remembered that evening, is that true?
 
 
 62
 COUNSEL FOR CORPUS: Yes, Your Honor.
 
 
 63
 THE COURT: Do you have a transcript?
 
 
 64
 COUNSEL FOR CORPUS: Yes, Your Honor.
 
 
 65
 THE COURT: Let him read it over to refresh his memory.
 
 
 66
 (Appellant's Appendix, Vol. IV at 000707-08).
 
 
 67
 After Kimbro testified as to what he had witnessed the night of the shooting, the district court observed during a bench conference that "I do think in regard to past recollection, the record should reflect that the witness was given a copy of the transcript of his prior testimony after he said he couldn't remember what had happened and it would be helpful to him and he testified fully about what happened and never glanced at the transcript of the prior statement...." Id. at 000714. Kimbro also testified during direct examination that he had told the police "the same things [he had] told the jury." Id. at 000737.
 
 
 68
 We hold that inasmuch as Kimbro was able to testify during the trial and relate to the jury the same things he had related to the police during his videotaped interview, the district court's exclusion of the video did not constitute a gross abuse of discretion.
 
 
 69
 AFFIRMED.
 
 
 
 *
 The Honorable John L. Kane, Jr., Senior Judge for the District of Colorado, sitting by designation
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470