JjKUHN, Judge.
This is an appeal from a trial court’s dismissal of plaintiffs-appellants’ lawsuit seeking-payments and damages allegedly owed by defendants-appellees, State of Louisiana, Department of Public Safety and Corrections, Office of State Police (DPSC/OSP)[2] and the Louisiana State Police Commission, for overtime violations of the Fair Labor Standards Act (FLSA). We affirm.
I. THE FLSA
The FLSA was enacted in 1938. Congress’s stated purpose in enacting the FLSA was to eradicate from interstate commerce labor conditions detrimental to the maintenance of the minimum standard of living-necessary for the health, efficiency, and general well-being of workers. 29 U.S.C. § 202(a). In its present form, the FLSA establishes minimum wage, overtime pay, child labor, and equal pay requirements.
Prior to 1974, the FLSA did not apply to state governments. Congress extended the FLSA to cover state employees with the FLSA Amendments of 1974. FLSA Amendments of 1974, 29 U.S.C. § 203(d) and (x). See also Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528, 533, 105 S.Ct. 1005, 1008, 83 L.Ed.2d 1016 (1985); Lamon v. City of Shawnee, Kan., 972 F.2d 1145, 1149 (10th Cir.1992), cert. denied, 507 U.S. 972, 113 S.Ct. 1414, 122 L.Ed.2d 785 (1993). In National League of Cities v. Usery, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), the United States Supreme Court addressed the constitutionality of the 1974 Amendments. The Court held that Congress could not extend the FLSA under the Commerce Clause of the United States Constitution “to directly displace the States’ freedom to structure integral operations in areas of traditional governmental functions.” National League of Cities, 426 U.S. at 852, 96 S.Ct. at 2474. The Court cited the ability to structure employer-employee relationships in areas such as police protection and parks and recreation as an example of |:¡a function well within the area of traditional operations of state governments. Id. at 851, n. 16, 96 S.Ct. at 2474, n. 16.
In 1985, in Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528, 105 S.Ct. 1005, the Court revisited the question presented in Usery. In a 5-4 decision, the Court overturned Usery holding that the FLSA again applied to the states. Id. at 556-57, 105 S.Ct. at 1020-21. However, “[bjecause of the difficulty posed to state and local employers by the sudden resurrection of the Act, Congress delayed until April 15, 1986, the Act’s application to state and local governments.” Lamon, 972 F.2d at 1150.[3]
The FLSA often is described as a minimum-wage, maximum-hours law. The overtime pay requirement is set forth at 29 U.S.C. § 207(a)(1), and provides as follows:
Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce or in the production of goods in commerce, or is employed in an enterprise engaged in commerce or in the production of goods in commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed.
Hence, the keystone of the overtime provisions of the FLSA is the general rule that an employer must compensate an employee at a rate not less than one and one-half times the employee’s regular rate for all hours worked above 40 in a given workweek. Although *1092 § 207(a)(1) sets forth the general rule regarding maximum-hours and overtime pay, state and local governments are allowed to employ law enforcement personnel under the terms set forth in § 207(k). Section 207(k) enables public employers to deviate from the standard 40-hour workweek and establish an alternative maximum-hours threshold for law enforcement personnel.
It is the deviation permitted in § 207(k) that is at the heart of this appeal.
JJI. BACKGROUND
Each plaintiff in this lawsuit is a current or former, full-time, state police officer employed by DPSC/OSP.[4] From April 15,1986, (when the FLSA became applicable to state and local governments) through August 29, 1994, DPSC/OSP required a police officer to work up to 6 hours in excess of the 80 hours scheduled during a 14-day period for which he was credited with straight time compensatory time off, i.e., the officer was not paid in cash or credited with compensatory time off at the overtime rate. Instead, each officer was credited with straight time compensatory time off, i.e., one hour of time off for each hour the officer worked in excess of 80, up to and including 86 hours.[5] For all hours beginning with the 87th hour an officer worked, he was paid in cash at a rate of one and one-half times his regular rate of pay.
At trial, plaintiffs contended, inter alia, that DPSC/OSP’s practice of granting compensatory time off at straight time (referred to within the OSP as “non-payable k time”) for the 81st through the 86th hour of work performed by a police officer in a 14-day period constituted a violation of the FLSA. They urged that the practice of granting non-payable k time is not permitted under § 207(k) and, as such, DPSC/OSP violated the FLSA. Additionally, plaintiffs asserted that DPSC/OSP could not find refuge under § 207(0) of the FLSA, which permits employees of state government to receive compensatory time off in lieu of overtime compensation, because DPSC/OSP’s non-payable k time plan does not conform to the requisite terms of that section.
To support its assertion that it has not violated the FLSA, DPSC/OSP maintained that pursuant to § 207(k), it had adopted an 86-hour, 14r-day work period and relied on its established practice of not paying officers overtime compensation until the 87th hour of work performed in the work period, as well as its Procedural Order 203, which set forth |6its policy. DPSC/OSP reasoned that, having availed itself of a § 207(k) deviation, it owed no overtime to the police officers until after the 87th hour of work performed.
At trial, the parties entered into the following pertinent stipulated facts.
—Commissioned, nonexempt Louisiana State Troopers (“Troopers”) are regularly scheduled to work 80 hours in a 14-day work period.
—The work schedule for Troopers that work the road generally consists of six 12-hour shifts and one 8-hour shift in a 14-day work period.
—Prior to August 29, 1994, Troopers who worked more than 80 hours and up to 86 hours in a 14-day work period were credited with compensatory time off at straight time for such hours worked.
—Both before and after the August, 1994 revision of Procedural Order 203, Troopers who physically worked more than 86 hours in a 14-day work period were entitled to be paid cash at overtime rate for such hours worked.
—A trooper’s “regular rate” for purposes of determining overtime compensation is calculated as follows:
Monthly salary x 12 months 4- 26 pay period (sic) -*• 80 = regular rate
*1093 —A Trooper’s “overtime rate” is calculated by multiplying the regular rate by 1.5.
By agreement of the parties, the liability and damages issues were severed. After trial on the liability issue, the trial court determined that DPSC/OSP had availed itself of a § 207(k) deviation from the standard workweek and specifically found that DPSC/ OSP had adopted an 86-hour, 14-day work period. Reasoning that overtime compensation under the FLSA was not owed to police officers until the 87th hour of work in the 14-day work period, the trial court concluded plaintiffs were not entitled to relief and dismissed their lawsuit. Plaintiffs appeal, raising the following issues.
(1) Whether the trial court was manifestly erroneous in finding that DPSC/OSP adopted an 86-hour, 14-day work period in accordance with § 207(k) of the FLSA; and
(2) Whether the trial court erred as a matter of law in concluding plaintiffs are salaried employees under the FLSA, thereby tainting its factual determination that DPSC/OSP adopted an 86-. hour, 14-day work period.
III. ANALYSIS
Section 207(k) of the FLSA provides in relevant part:
JeNo public agency shall be deemed to have violated subsection (a) of this section with respect to the employment ... of any employee in law enforcement activities ... if—
(1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975; or
(2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) of paragraph (1)) bears to 28 days,
compensation at a rate not less than one and one-half times the regular rate at which he is employed.
The Secretary of Labor has determined that a law enforcement employee may work 86 hours in a 14-day work period before a state must pay overtime under the FLSA. 29 C.F.R. § 553.230.[6]
Section 207(k) allows state and local governments to pay its law enforcement employees at their regular rate for the first 86 hours in a 14-day work period, but requires it to pay them at their overtime rate for hours in excess of 86. See Lamon, 972 F.2d at 1150. The public employer has the burden of proving, by a preponderance of the evidence, that a § 207(k) work period has been adopted. Id. at 1153-54.
The starting point in analyzing the § 207(k) work period is the language of the Department of Labor’s (“DOL”) interpretative regulations. As a general matter, these regulations “constitute a body of experience and informed judgment to which courts ... may properly resort for guidance.” Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 7161, 164, 89 L.Ed. 124 (1944). Under *1094 29 C.F.R. § 553.224, the term “work period” is defined as:
(a) ... [A]ny established and regularly recurring period of work which, under the terms of the [FLSA] and legislative history, cannot be less than 7 consecutive days nor more than 28 consecutive days. Except for this limitation, the work period can be of any length, and it need not coincide with the duty cycle or pay period or with a particular day of the week or hour of the day. Once the beginning and ending time of an employee’s work period is established, however, it remains fixed regardless of how many hours are worked within the period. The beginning and ending of a work period may be changed, provided that the change is intended to be permanent and is not designed to evade the overtime compensation requirements of the [FLSA],
(b) An employer may have one work period applicable to all employees, or different work periods for different employees or groups of employees.
Thus, there is a two-part test under § 553.224. McGrath v. City of Philadelphia, 864 F.Supp. 466, 474 (E.D.Penn.1994) (and the cases cited therein). First, the public employer must prove that it has “established” a § 207(k) work period. Second, it must prove that such period is “regularly recurring.” Id.
In determining whether DPSC/ OSP established a § 207(k) work period, we must focus on whether the plaintiffs actually worked cycles of between seven and twenty-eight days. See Birdwell v. City of Gadsden, Ala., 970 F.2d 802, 804 (11th Cir.1992). The “establishment” of a § 207(k) work period may be manifested by an appropriate public declaration of intent to adopt a work period of between 7 and 28 days. See Lamon, 972 F.2d at 1154 (wherein the court found no prejudice resulting from a jury instruction which stated that a work period is adopted where specific schedule is “put into effective operations” by the employer). Alternatively, a public employer may establish a § 207(k) work period even without making a public declaration, as long as its employees actually work a regularly recurring cycle between 7 and 28 days. See Birdwell, 970 F.2d at 806 (holding that work period of seven days could be established by uncontradicted evidence that employees worked regular seven-day cycles). Thus, a § 207(k) work period can be established whether or not a public declaration is made. See McGrath, 864 F.Supp. at 18476. Whether the public employer has proved that it adopted a § 207(k) work period is a question of fact. See Birdwell, 970 F.2d at 805 (and the cases cited therein).
We are mindful that in reviewing factual findings, Louisiana’s courts of appeal may not set aside a trial court’s findings of fact in the absence of “manifest error” or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Stobart v. State, 617 So.2d 880, 882 (La.1993).
Plaintiffs’ first contention is that the trial court committed error in concluding that DPSC/OSP had established an 86-hour, 14-day work period in accordance with § 207(k) of the FLSA. Based on the stipulations, it is undisputed that DPSC/OSP established a work period of 14 days, and this stipulated fact is supported by the evidence. Plaintiffs urge that because they were regularly scheduled to work 80 hours, DPSC/OSP actually established an 80-hour, 14-day work period, not an 86-hour, 14-day work period.
DPSC/OSP takes the position that having adopted a 14-day work period, the FLSA does not require it to pay plaintiffs, who are full-time, salaried employees, any overtime compensation until the 87th hour worked in the 14-day period. DPSC/OSP suggests that the granting of non-payable k time to police officers who worked more than 80 but less than 87 hours in a work period is a fringe benefit. Because its employees actually worked regularly recurring 14-day cycles and were not paid overtime, but rather non-payable k time, until the 87th hour of work, DPSC/OSP argues that it has put into effective operation an 86-hour, 14-day work period.
*1095 Kay Debenedetto, the payroll manager for DPSC, verified in her testimony that during the time for which plaintiffs claim they are owed overtime compensation for FLSA violations, it was the practice of the state police to give up to six hours straight compensatory time off for the 81st through 86th hour that an officer worked. Regardless of whether the officer worked 80, 81, or up to 86 hours in the 14-day work period, the officer would be paid the same amount according to Debenedetto. Debenedetto re-ferredjgto the practice as “the 86-hour plan” and stated that it “was the plan [OSP] operated under” during the time for which plaintiffs allege overtime compensation is due: The testimony of David Viceellio, the finance manager of OSP, and Ronald Jones, a research specialist for OSP, was in conformity to that of Debenedetto’s regarding OSP’s practice of giving police officers compensatory time off at straight time for the 81st through 86th hour of work performed during the work period. We find a reasonable basis exists to support the trial court’s finding that DPSC/OSP established an 86-hour, 14-day work period and that it was regularly recurring. Accordingly, we cannot say the finding is manifestly erroneous or clearly wrong.
Plaintiffs assert that the failure of DPSC/OSP to raise the regular rate of pay of a police officer in order to compensate for 86 hours shows that DPSC/OSP deliberately decided not to adopt an 86-hour work period. The FLSA may be implicated where it appeal’s that a public employer reduced its law enforcement employee’s regular rate of pay in order to decrease the public employer’s statutory overtime obligations. See e.g., Blanton v. City of Murfreesboro, 856 F.2d 731, 735 (6th Cir.1988). Plaintiffs do. not dispute that DPSC/OSP continued paying its police officers at the same rate of pay in existence before the adoption of the § 207(k) deviation; thus, them claim is not analogous. Schmitt, 864 F.Supp. at 1067. We find their contention to be without merit.
Plaintiffs challenge the trial court’s factual finding that DPSC/OSP adopted an 86-hour, 14-day work period, asserting that it is flawed as a matter of law. Plaintiffs urge that under the FLSA they are hourly employees and, as such, are entitled to overtime relief for all hours of work performed in the 14-day work period in excess of 80 hours.[7]
IiqAs of January 1, 1991, plaintiffs were transferred from the jurisdiction of the State Civil Service Commission to the State Police Commission.[8]. Civil Service Rules 11.1 and 11.2 establish a distinction between full-time and part-time employees. Despite being paid on a monthly basis, plaintiffs maintain the requirement in Rule 11.1(c) that DPSC/ OSP designate and record the number of hours and days which will constitute the regular period of work for each full-time employee evinces that police officers are hourly employees under the FLSA. They urge that “true” salaried employees do not require such bookkeeping because they work the number of hours necessary to get the job done. Plaintiffs cite 29 C.F.R. § 541.118 as authority to buttress their proposition that they are hourly employees, arguing that Louisiana’s Civil Service Rules establish “a system whereby an employee who is absent from work utilizes his annual and/or sick leave balances to account for missed work and still be paid.”[9] Based on this, plaintiffs *1096 assert that they are hourly employees under the FLSA. In order to ascertain whether plaintiffs are salaried or hourly employees, we examine the terms of their employment with DPSC/OSP.
InPlaintiffs are and were full-time, classified employees under the terms of their employment. Their position descriptions state that they are salaried employees. They were hired at monthly, not hourly, rates. Civil Service Rule 11.1 provides for a 40-hour workweek for full-time employment, except in those instances where the employee is subject to a deviated work period. Thus, the rates of pay for full-time, classified employees are based on the 40-hour workweek, absent a deviation of the standard workweek. Because DPSC/OSP adopted an 86-hour, 14-day work period, plaintiffs are not subject to the standard workweek. They are subject to deviated schedules and, pursuant to Civil Service Rules 6.20 and 6.24,[10] their salaries are based on, and compensates them for, all non-overtime hours worked. Since we have found no error in the trial court’s finding that DPSC/OSP adopted an 86-hour, 14r-day work period, we agree with the trial court’s conclusion that plaintiffs have been paid for every non-jovertime^ hour worked. Accordingly, the FLSA is not implicated under the facts of this case.[11]
Nor are we persuaded by plaintiffs’ assertion that under 29 CFR § 541.118 their monthly rate of pay does not qualify as a salary for purposes of the FLSA. Section 541.118 is applied to determine whether an employee, allegedly employed as an exempt executive under § 213 of the FLSA, is paid on a “salary basis” for the purpose of the regulations. Sections 541.212 and 312 explicitly adopt the “salary basis” test of § 541.118 to determine whether persons are exempt under § 213 of the FLSA as administrative and managerial employees. DPSC/ OSP maintains that the salary basis test is irrelevant in this case because DPSC/OSP does not seek exemptions for executive, administrative or managerial employees under § 213(a)(1) of the FLSA. DPSC/OSP urges that in light of its adoption of a § 207(k) deviation of the standard workweek, whether plaintiffs are entitled to overtime compensation should be based on the nature of plaintiffs’ work as public law enforcement employees and not on plaintiffs’ manner of compensation.
According to § 541.118(a), an employee is paid on a “salary basis” if he regularly receives “a predetermined amount constituting all or part of his compensation, which amount *1097 is not subject to reduction because of variations in quality or quantity of the work performed.” Deductions may not be made from the “predetermined amount” for absences occasioned by the employer or by the operating requirements of the business. 29 C.F.R. § 541.118(a)(1). An employer may make deductions, however, (1) when the employee is absent from work for one full day or more for personal reasons, sickness, or disability, as long as the deduction is made according to a plan, policy and practice and (2) “in good faith for infractions of safety rules of major significance.” § 541.118(a)(2), (3), and (5). Section 541.118(a)(6) provides that “the effect of making a deduction which is not permitted under these interpretations will depend upon the facts of the particular case.”
| join Schmitt, noting the policy behind requiring a public employee to account for his work time, the court stated:
[DOL] has recognized that, unlike the private sector, the public sector compensates its employees with systems derived from “principles of accountability that governmental employees should not be paid for time not worked due to the need to be accountable to the taxpayers for the expenditure of public funds.” As [DOL] has explained, “[p]ublic accountability is a broad concept that forms the foundation for many governmental administrative practices, including most public sector pay systems, and is derived from the desires of taxpayers that their government be accountable to them for expenditures from the public treasuries. Public accountability embodies the concept that ... public agencies are held to a higher level of responsibility under the public trust that demands effective and efficient use of public funds in order to serve the public interest.” Because of public accountability, public sector employers often are- unable “to avoid not paying their employees for hours not worked, thereby necessitating deductions for partial day absences.” [DOL] also acknowledged that these principles often are embodied in statutes or regulations “requiring all employees, regardless of how paid, to use accrued leave time or incur a reduction in pay for any absences from work.” (Citations and footnote omitted.)
864 F.Supp. at 1068.
Assuming, without deciding, that § 541.118 is applicable to the facts in the ease sub judice, the policies challenged by plaintiffs do not prevent them from being salaried employees. Schmitt, 864 F.Supp. at 1068. See also Barner v. City of Novato, 17 F.3d 1256, 1261-62 (9th Cir.1994) (holding that a reduction in paid leave time for partial day absences does not defeat salaried status); Kuchinskas v. Broward Cty., 840 F.Supp. 1548, 1555-56 (S.D.Fla.1993), aff'd, 86 F.3d 1168 (11th Cir.1996), cert. denied, — U.S. -, 117 S.Ct. 1080, 137 L.Ed.2d 215 (1997) (holding that reducing leave banks for partial day absences, requiring employees to keep time sheets, basing salary of 2,080 hours per year, inter alia, did not negate county employees’ status as salaried employees and convert them into hourly employees for purposes of the FLSA); Fire Fighters Local 2141 v. City of Alexandria, Va., 720 F.Supp. 1230, 1232 (E.D.Va.1989), aff'd, 912 F.2d 463 (4th Cir.1990) (holding that docking accrued leave or compensatory time for partial day absences did not defeat salaried status because leave and compensatory time does not constitute a salary for the purposes of § 541.118 test).
1 ^According to the Civil Service Rules, each month during the time for which plaintiffs are claiming overtime compensation is due, police officers received their base rate of pay, adjusted for overtime, shift differential, holiday pay or leave without pay. Except for these adjustments, police officers’ pay checks did not vary from pay period to pay period during the time for which plaintiffs are claiming overtime compensation is due.[12] Accord *1098 ingly, we conclude that the police officers’ rate of pay constitutes a salary as opposed to hourly wages and hold that plaintiffs’ salaries compensated them for all non-overtime hours worked per pay period.[13]
IV. CONCLUSION
Plaintiffs are law enforcement employees. As such, their public employer, DPSC/OSP, is permitted to adopt a deviated work period from the standard workweek as provided in § 207(k) of the FLSA. Having found no errors in the trial court’s conclusions that DPSC/OSP adopted an 86-hour, 14-day work period and that plaintiffs are salaried employees, we hold that DPSC/ OSP’s policy of granting police officers compensatory time off at straight time for work performed after the 80th but before the 87th hour in the 14-day work period is not a violation of the FLSA. Because plaintiffs have been duly compensated for all FLSA overtime hours (i.e., all hours after the 86th hour of work performed during the 14-day work period), they are not entitled to any relief under the FLSA. Accordingly, we affirm the judgment dismissing plaintiffs’ petition with prejudice. All costs of this appeal are assessed to plaintiffs.
AFFIRMED.

. Although the petition names only DPSC as a defendant, the parties routinely refer to that defendant in brief and at trial as the “Office of State Police.”

.The historical development of the FLSA presented herein is extracted from Schmitt v. State of Kansas, 864 F.Supp. 1051, 1059-1060 (D.Kan.1994).

. Originally, eighteen police officers filed this lawsuit. By supplemental and amending petitions, an additional seventy-seven police officers joined in the lawsuit.

. Beginning on August 29, 1994, after a representative of the U.S. Department of Labor questioned the practice of crediting an officer with compensatory time off at straight time for the 81st through the 86th hour of work performed in the 14-day period, DPSC/OSP began paying police officers cash at the rate of time and one-half their regular pay for all hours worked in excess of 80.

. 29 C.F.R. § 553.230(b) provides in pertinent part:
For those employees engaged in law enforcement activities ... who have a work period of at least 7 but less than 28 consecutive days, no overtime compensation is required under section [207(k) ] until the number of hours worked exceeds the number of hours which bears the same relationship to 171 as the number of days in the work period bears to 28.
Section 553.230 includes a chart which sets forth 86 hours in a 14-day work period as the maximum hours standard for law enforcement.

. Apparently, plaintiffs are asserting that under § 207(a) of the FLSA and Louisiana Civil Service Rule 11.1(a), the standard workweek is 40 hours. Because they have stipulated to a work period of 14 days, they seem to be maintaining that as hourly employees, DPSC/OSP could not require them to work more than 80 hours in the 14-day period without running afoul of the FLSA.

. Both the State Civil Service Commission and the State Police Commission employ the same rules relative to the terms of plaintiffs’ employment as police officers. Because the parties and the trial court refer to these rules as the “Civil Service Rules,” we do also.

.Rule 11.5 sets forth the manner in which an employee earns annual and sick leave. Rule 11.13 provides for an employee’s use of sick leave stating in pertinent part:
(a) Sick leave may be utilized by an employee ' who has sufficient leave to his credit for necessary absence from duty because of:
1. Illness or injury which prevents him from performing his usual duties.
2. Medical, dental, or optical consultation or treatment.-
[[Image here]]
(b) Sick leave shall not be charged for non-work days.
*1096 (c) The minimum charge for sick leave shall be one-half hour.
Rule 11.7 provides for an employee’s use of annual leave stating in relevant part:
(a) Annual leave must be applied for by the employee and may be used only when approved by the appointing authority or his designated representative.
(b) Annual leave shall not be charged for non-work days.
(c) The minimum charge to annual leave records shall not be less than one-half hours.

. Rules 6.20 states:
An appointing authority shall select and use one of the applicable options listed below for those overtime hours actually worked in excess of 40 hours per week. Only options 1 or 2 under Rule 6.20(a) shall be used for overtime work by employees in nonexempt status regardless of GS level. Refer to Rule 6.24 for fire, law enforcement and hospital employees. PAY RANGE OPTIONS
(a) GS-11 and Below (1) Cash payment at time and one-half rate.
(2)Compensatory leave earned at time and one-half rate.
(3) Cash payment at regular rate.
(4) Compensatory leave earned hour for hour.
(b) GS-12 and Above (1) Cash payment at regular rate.
(2) Compensatory leave earned hour for hour.
(3) No overtime compensation.
Rule 6.24 provides:
An appointing authority may use any of the special overtime pay provisions permitted by the [FLSA]; however, if an employee actually works in excess of full-time hours during the pay period, but less than the number of hours required to be treated as overtime under the FLSA, Rule 6.20 only shall apply for such overtime hours.

. Plaintiffs do not contend that their regular rates of pay fell below the minimum wage at any time during the relevant period.

. We note the granting of compensatory time earned hour for hour after the 80th but before the 87th hour of work in a 14-day work period is not one of the enumerated exceptions to the general rule in § 207(e) which defines an employee's regular rate of pay as "all remuneration for employment paid to, or on behalf of, the employee.”

. Plaintiffs maintain that DPSC/OSP failed to conform to the requisites of § 207(o) (which permits a public employee to be paid in compensatory time off at the rate of one and one-half in lieu of overtime compensation) and, therefore, cannot claim the policy of granting non-payable k time is valid under that provision of the FLSA. In so contending, plaintiffs assert that Civil Service Rules 11.29(f) and 6.25(c), which permit annual caps of 360 hours on the accrual of compensatory time earned hour for hour, disqualify DPSC/OSP from utilizing § 207(o). Having found no error in the trial court's conclusion that because DPSC/OSP adopted an 86-hour, 14-day work period as permitted under § 207(k), plaintiffs are not owed any overtime compensation under the FLSA, we find it unnecessary to address plaintiffs’ assertions regarding § 207(o).